## SCHROEDER v. THE C. R. I. & P. R. Co.

1. **Evidence:** EXAMINATION OF THE PERSON: DAMAGES. In an action for damages for personal injuries, the plaintiff may be required by the court, upon a proper application therefor by the defendant, to submit his person to an examination for the purpose of ascertaining the character and extent of his injuries.

> *Argument 1.* A party to an action has the right to demand the administration of exact justice, and, to this end, that evidence essential thereto and within the control of the court shall be produced.

> *Argument 2.* It is within the power of the court to compel an examination since the plaintiff is before it as a witness, and upon his refusal he may be treated as recusant.

> *Argument 3.* The courts have authority to direct an examination in actions of divorce on the ground of impotency.

> *Argument 4.* Plaintiffs are permitted in actions for personal injuries to exhibit their wounds or injuries to the jury.

2. **Railroads:** NEGLIGENCE: WHO IS AN EMPLOYE. If a person is required in the course of his employment by a railroad company to go upon a train, and he does so in the discharge of his duty, he is to be regarded as being engaged in its operation, notwithstanding his employment may not be connected with the running of its trains, and the company is liable to him for injuries resulting from the negligence of a co-employe.

*Appeal from Clinton Circuit Court.*

TUESDAY, DECEMBER 11.

Action to recover for personal injuries sustained by plaintiff, while in the employment of defendant, by reason of the negligence of defendant's employes. There was a verdict and judgment for plaintiff; defendant appeals. The facts involved in the questions of law determined by the court are found in the opinion. The case has before been in this court upon a former appeal by defendant. See 41 Iowa, 344.

*Cook & Richman,* for appellant.

*W. A. Foster,* for appellee.

BECK, J.—I. Plaintiff, with numerous other men, was employed by defendant in taking down and removing its old railroad bridge across the Mississippi river between Davenport

and Rock Island. The timbers of the bridge were, when taken down, placed upon cars and in that manner transported to a place convenient for depositing them. To reach this place with the train it was necessary to draw it westward with an engine and at a certain point change it, by means of a "switch," to another track, upon which it was "backed" to the place where the load was deposited. Plaintiff was required, by the employe of defendant under whose direction he was working, to go from the bridge, when the train had received its load, with it in order to assist in unloading the timbers. With other men he went upon the train and seated himself upon the timbers. In backing, the timbers upon which he was sitting were thrown off the car, and plaintiff was also thrown to the ground, the timbers, or some of them, falling upon him. Plaintiff claims that the accident occurred through the negligence of defendant's employes, and that the injuries he received were severe, and permanent in their character, and have so far disabled him that he cannot engage in employments requiring ordinary strength and vigor.

II. The issues of the case involved the extent of the injuries inflicted upon plaintiff, and their effect upon his health and strength. He testified upon the first trial that he was so far disabled that he could not engage in labor requiring the exercise of common strength and activity. The testimony was to the effect that his hips and back were the seats of great pain, and that the injuries had impaired his nervous system, and that his limbs and some of his internal organs were, to an extent, paralyzed.

1. EVIDENCE: examination of the person: damages.

After the jury were empaneled, and before the introduction of any testimony, the defendant filed a written application asking that a proper order of the court be made, requiring the plaintiff to submit to an examination by physicians and surgeons, that they might determine the true condition of his health, and the character and extent of his ailments, to the end that it might be known whether, indeed, he was suffering from any disability, and, if so found, whether it originated from the injuries sustained by the timbers falling upon him, as claimed by him in his petition and testimony. The defendant in its

application asked that such examination should be made by a proper number of physicians, to be selected, in equal numbers, by plaintiff and defendant, and it was proposed by defendant that its own medical officer should not be one of the number, and that the expenses of such examination would be paid by defendant. In support of this application the affidavit of a surgeon and physician in the employment of defendant was filed, stating that he had professionally attended plaintiff immediately after he was injured, and had made personal observation of plaintiff's condition, and had heard his testimony at the former trial, and it was his belief, based upon these means of knowledge, that his injuries were not of the character and extent claimed by him, and that the truth of the matter could be ascertained by a proper personal examination of plaintiff.

This application was resisted by plaintiff by exceptions and an affidavit of himself, which show, among other matters, that it was not made until after the jury were sworn; that plaintiff had no witness present, except himself, who could testify to his physical condition, for the reason that the printed testimony of the physicians at the first trial, used in the Supreme Court by consent of parties, was to be read upon the trial by plaintiff; that a number of physicians were in attendance at the court through the procurement of defendant, who, plaintiff charged, were interested against him; that plaintiff is not acquainted with physicians in the county where the case was on trial, the venue having been changed from Scott county, and that he is without means to procure the attendance of physicians for the purpose of an examination.

It is also alleged in the exceptions "that the affection from which plaintiff now suffers is a nervous derangement, injuring the bowels, and partial paralysis," and, as shown upon the former trial, an examination would fail to reveal the extent and character of his ailments. The plaintiff further insisted that the court had no authority to order the examination to be made, and no power to enforce such an order, if made. The application was overruled on the ground that defendant was not entitled, as a matter of right, to the order sought.

The plaintiff testified, in the course of the trial, that his

back and internal organs of the lower part of the body were affected by the injury, and that one of his legs was disabled to an extent that deprived him of its full use, and that he thought it appeared to be smaller and somewhat shrunken.  Upon the cross-examination, after having stated the condition of his legs, he was asked if he was willing to permit his limbs to be examined by physicians.  His counsel objected to this question, and the court did not permit it to be propounded to him.

These rulings are the subject of separate objections on the part of defendant.  As they present substantially the same question they may be considered together.

III.   The plaintiff must be regarded as objecting to an examination of the diseased parts of his · body by competent physicians and surgeons, although no objection thereto was formally expressed by him.  His resistance to the application made by defendant and his objection to the interrogatory must be regarded as a refusal on his part to consent to an examination.  The first ruling of the court is based upon the ground that it possessed no authority to order the examination, as a matter of right possessed by defendant.  We are to understand that the like reason controlled the decision upon the competency of the question objected to by defendant.  It seems quite clear that, if defendant had no right to require plaintiff to submit to an examination of his person, the court rightly decided in overruling defendant's application.  The same is true as to the ruling upon the interrogatory.  If the plaintiff had answered the question negatively, or refused to answer, the court could not, in this view of the law, have required an answer, or required plaintiff to submit to the examination; therefore, if the rule recognized by the court is correct, it would have been vain to have ruled differently.

The converse of this proposition must be true, namely:  If the defendant was entitled, as a matter of right, to have the person of plaintiff examined, the court possessed the authority and power to order it and enforce its order.  This cannot be doubted.  As to the manner of enforcing the order we may have something to say hereafter.  As the decisions of the court under consideration were based upon the view that de-

fendant could not demand the examination of plaintiff, as a matter of right, the soundness of the decision must be first considered.

IV. Whoever is a party to an action in a court, whether a natural person or a corporation, has a right to demand therein the administration of exact justice. This right can only be secured and fully respected by obtaining the exact and full truth touching all matters in issue in the action. If truth be hidden, injustice will be done. The right of the suitor, then, to demand the whole truth is unquestioned; it is the correlative of the right to exact justice. It is true, indeed, that on account of the imperfections incident to human nature perfect truth may not always be attained, and it is well understood that exact justice cannot, because of the inability of courts to obtain truth in entire fullness, be always administered. We are often compelled to accept approximate justice as the best that courts can do in the administration of the law. But, while the law is satisfied with approximate justice where exact justice cannot be attained, the courts should recognize no rules which stop at the first when the second is in reach. Those rules, too, which lead nearer the first, should be adopted in preference to others which end at points more remote. This doctrine lies at the foundation of the rules of evidence, though it must be confessed that the superstructure does not always fully conform thereto. Great progress, however, in a comparatively recent period has been made, by legislation and judicial decisions, in the work of conforming the system of evidence to this germinal principle. The most notable of the steps in this progress is the abrogation of the rule which precluded parties to actions from giving testimony therein. This rule, however, was mistakenly supposed to be in harmony with the principle just stated. It was believed that the interest of parties to actions would cause them, as witnesses, to pervert the truth or conceal it. But when it was discovered that, as a rule, this was an erroneous conclusion, legislation was invoked enabling parties to testify. The wisdom of the change has been fully vindicated by experience.

In the case before us plaintiff claims to recover for injuries

sustained on the 6th day of November, 1872; in December, 1874, the first trial was had. He claims in his pleadings, and so testified on the former trial, that the injuries produced permanent disability; the like testimony was repeated at the last trial. It quite satisfactorily appeared, by the application of defendant for an order requiring his examination and the affidavit supporting it, that the full effect of the injuries and the extent of his disability could be determined by physicians and surgeons upon an examination of the body of plaintiff. This, we think, was clearly established by the professional testimony given at the trial. It appears that no thorough and careful examination was made by physicians since the first trial; and, indeed, it may be well claimed that no such examination was made at any time after the physician ceased to attend upon him for the injuries. His testimony at the first trial as well as at the second was to the effect that he suffered continually from the injuries, and his disability was of a character that would probably be permanent. The decided, indeed the very great preponderance of the evidence, apart from his own testimony, was to the effect that the injuries had wrought no such effects as claimed by plaintiff. The medical witnesses unite in testifying that an examination of his person would reveal, almost certainly, his true condition. Indeed, the showing made by defendant upon the application for examination as to the nature of his disease authorized such a conclusion. To our minds the proposition is plain that a proper examination by learned and skillful physicians and surgeons would have opened a road by which the cause could have been conducted nearer to exact justice than in any other way. The plaintiff, as it were, had under his own control testimony which would have revealed the truth more clearly than any other that could have been introduced. The cause of truth, the right administration of the law, demand that he should have produced it.

We will consider the objections urged to this view of the case. It hardly appears that the objections urged in the exceptions of plaintiff to defendant's application ought to be here considered, as the court below held none of them good, but

decided the point upon the ground that defendant asked for a matter to which it had no right. It is, however, proper to remark that the inability of plaintiff to pay physicians who should make the examination was no impediment to the order, as defendant proposed to furnish the means required. The facts that the application was made after the jury was sworn, and plaintiff knew no physicians in the county of the trial, do not appear to be well founded objections to allowing the order, for it does not appear that ample time could not have been allowed by the court for the examination in a manner that would have proved satisfactory to plaintiff. The fact that defendant had present in court so many physicians, charged by plaintiff with having an undue interest against him, was no sound objection, for the court could have refused to appoint any such to make the examination.

VI. But it is urged the court was clothed with no power to enforce obedience of plaintiff, had such an order been made. Its power, in our judgment, was amply sufficient to coerce obedience. The plaintiff would have been ordered by the court, by submitting his person to examination, to permit the introduction of testimony in the case. His refusal would have. been an impediment to the administration of justice, and a contempt of the court's authority. He would have been subject to punishment as a recusant witness who refused to answer proper questions propounded to him. Should such recusancy too long delay the court, or prove an effective obstruction to the progress of the case, the court could have stricken from the pleadings all the allegations as to permanent injury, and withdrawn from the jury that part of the case. The plaintiff by voluntarily withdrawing his claim for such injury would have been relieved from the necessity of submitting to the examination, and proceedings as for contempt would have been suspended. When it is remembered that plaintiff was a witness before the court, that the examination of his person would have had the effect to elicit testimony from him, as upon a cross-examination, the power of the court over him will be readily understood.

VII. It is said that the examination would have subjected

him to danger of his life, pain of body and indignity to his person. The reply to this is that it should not, and the court should have been careful to so order and direct. Under the explicit directions of the court, the physicians should have been restrained from imperiling, in any degree, the life or health of the plaintiff. The use of anaesthetics, opiates or drugs of any kind should have been forbidden, if, indeed, it had been proposed, and it should have prescribed that he should be subjected to no tests painful in their character. As to indignity to which an examination would have subjected him, as urged by counsel, it is probably more imaginary than real. An examination of the person is not so regarded when made for the purpose of administering remedies. Those who effect insurance upon their lives, pensioners for disability incurred in the military service of the country, soldiers and sailors enlisting in the army and navy, all are subjected to rigid examinations of their bodies, and it is never esteemed a dishonor or indignity. The standing and character of the physicians who should have been appointed to make the examination would not only have secured plaintiff from insult and indignity, but would have been a guaranty that nothing would have been attempted which would have endangered his life or health.

VIII. We have been able to find no case in which the question before us has been considered, and we have been referred to no authority by counsel that seems to have much application thereto. The courts have held in divorce cases, when the impotency of a party is in question, an examination may be ordered of the person alleged to be impotent. See 2 Bishop on Marriage and Divorce, § 590, *et seq.*, and notes. The foundation of this rule is the difficulty of reaching the truth in any other way than by an examination of the person. The authorities referred to may be regarded as giving some support to our conclusion.

IX. It is the practice of the courts of this State, sanctioned by more than one decision of this court, to permit plaintiffs who sue for personal injuries to exhibit to the jury their wounds or injured limbs, in order to show the extent of their

disability or suffering. If, for this purpose, the plaintiff may exhibit his injuries, we see·no reason why he may not, in a proper case and under proper circumstances, be required to do the same thing for a like purpose upon the request of the other party. If he may be required to exhibit his body to the jury, he ought to be required to submit it to examination of competent professional men.

X. The court instructed the jury that they were authorized to regard plaintiff's refusal to submit to an examination as an admission that the examination, if made, would have been against his interest in the suit. It is argued that this familiar rule of law would alone relieve defendant from the effect of prejudice on account of the refusal of plaintiff to be examined. This position is not correct. The defendant is left to depend upon the inference of the jury, which might or might not have been exercised, instead of having the truth disclosed by direct and positive evidence. The law will not require it to depend upon such inferences where it can afford the means of producing competent evidence upon the question in issue.

XI. Certain instructions given by the court on its own motion, and some of those given upon request of plaintiff, are 2. RAILROADS: complained of as being erroneous. The rule annegligence: employe. nounced by the court in these instructions is substantially to the effect that, if the plaintiff was employed for the purpose of taking down and moving the bridge, and in doing this work a train was used on defendant's road upon which plaintiff, in the course of his employment, and in obedience to the requirments of his superior, was riding at the time he sustained the injury, he was engaged in operating the road, and the defendant, if its negligence and the care of plaintiff were found, was liable under the statute. The rule contemplates the case of the train being operated for the purpose of removing the bridge. The purpose for which it is operated cannot relieve defendant of liability if the injury was sustained in its operation. If it was a part of plaintiff's employment to go upon the train, and he did so in the discharge of his duty, he is to be regarded as having been engaged in its operation, or his employment was connected with its operation. The rule

of the instructions is correct and is fully supported by *Deppe v. C. R. I. & P. R. Co.*, 36 Iowa, 52. We discover no errors in the other instructions given to the jury.

Other objections urged by defendant's counsel relate to the findings of the jury upon several issues raised by the pleadings, which, it is claimed, are in conflict with the testimony. We are not required to pass upon these objections, as the judgment, for the error of the court in refusing to require plaintiff to submit to an examination, must be reversed.

REVERSED.