## FITCHBURG R. CO. v. NICHOLS.

### (Circuit Court of Appeals, First Circuit. February 11, 1898.)

### No. 228.

1. CONTRIBUTORY NEGLIGENCE—PLEADING—BURDEN OF PROOF.

An allegation in the complaint that plaintiff was in the exercise of due care does not affect the rule of the federal courts that contributory negligence is a matter of defense as to which the burden of proof is on the defendant.

2. CARRIERS—INJURY TO CATTLE DROVER—PAYMENT OF FARE.

This case is within the settled rule that whether or not a drover in charge of cattle transported by rail pays special fare is immaterial in an action to recover for personal injuries.

3. SAME.

The usual rule of diligence on the part of carriers applies in favor of drovers in charge of cattle on trains, though subject to some modifications arising from the necessary conditions of the service which may be recognized in the special contracts of carriage.

4. SAME.

Provisions in a contract for transportation of cattle by rail, that when the person accompanying them shall leave the caboose, and pass over or along the cars or track, he shall do so at his own sole risk, and that the carrier will not be required to stop or start its trains at or from depots or platforms, do not extend the exemptions beyond the ordinary hazards peculiar to the running of stock and freight trains and to freight yards, and consequently do not include damage by a water spout which is negligently permitted to project too near the moving cars.

In Error to the Circuit Court of the United States for the District of Massachusetts.

This was an action at law by Roswell C. Nichols against the Fitchburg Railroad Company to recover damages for personal injuries received by him while in charge of cattle on a train. In the circuit court a verdict and judgment were rendered for the plaintiff, and the defendant sued out this writ of error.

George A. Torrey, for plaintiff in error.

George A. Blaney and William S. B. Hopkins, for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. This is an action to recover damages for personal injuries received by the defendant in error, Nichols, while traveling on a cattle train as a drover in charge of stock on the train. The declaration contains three counts for the same cause of action, in each of which it is alleged that Nichols, "while in the exercise of due care," was injured, etc. When the train arrived at a station known as "Baldwinsville," it stopped for water. This was taken from a spout between the tracks. The spout swung on a pivot, so that when not in use, and in its proper place, it was parallel

to the tracks. When used, it was moved by the fireman to a right angle to the tracks. It was the duty of the fireman, when sufficient water had been taken, to push the spout back to its proper place. There was evidence tending to show that on this occasion he failed in his duty, and pushed the spout only partially back, leaving it projecting. Nichols' testimony was substantially as follows:

"The train arrived at Baldwinsville at about twenty or twenty-five minutes after nine o'clock in the morning. Before arriving at Baldwinsville, I asked the conductor of the train when I should have time to look over the cattle. He said at the next stop that I should have ample time to look after them. He said nothing more about the time of the stop than that he had to take orders, and water, and take coal, for aught I know. This conversation was a little ways before we reached Baldwinsville. I was never over this portion of the Fitchburg Railroad before. When the train stopped, I got out of the car, caboose, or whatever you call it, and went along looking at the cattle. I saw some that were down in bad shape, and went to work to get them up. One was lying down flat and others atop of it, and I was at work at them getting them up at the time the train started. It started along, and I kept walking along, kept at work at them, getting their heads up, so that they would ride better. I kept walking along until I found the train was pulling out. I heard no whistle blown or bell rung, indicating that the train was to start. I received no notice from the conductor or any other of the train hands that the train was about to start. I must have been about half way up the train, I should think, when it started. I began to walk back to get onto the caboose, but the train was pulling out so fast that I found I could not make the caboose and get on, and so I did as we always do,—I got up on the side of the car. I laid my pole across the bumpers at the end of the car. With my left hand I took hold of the handle at the end of the car and stepped onto the step on the outside of the car. I put my left foot onto this step, and stepped with my right up onto the floor of the car where the cattle were standing that projects out a few inches, and then made a swing to get round onto the ladder that runs up on the end of the car. In turning around to get onto this ladder, as I stepped onto it, I was struck in the head. I do not know what struck me. The first thing I knew after that I was lying on my back in the car, and a couple of men were standing over me."

On cross-examination he said:

"I always ride in the caboose if I can. The caboose is the car on the rear of the train, and has seats in it, such as they are, for cattlemen and for brakemen who occasionally ride in it. That is where I should have gone if there had been time to get there. When I got off, I intended to get back into the caboose when I had performed my duties at the station and the train was ready to start. I should think the train stopped fully ten minutes at Baldwinsville. It is a small place, a country village. Before I went to work on the cattle at Baldwinsville, I carried some food to a man in my employment, who was on the forward end of the train. I walked up to give him the bag, and then I went to work at my cattle."

A witness testified that she saw the spout strike Nichols, and throw him from the train.

The shipper of the cattle signed a special contract for their transportation, and the defendant below relies on the following provision found in it:

"Whenever the person or persons accompanying said stock, under this contract, to take care of the same, shall leave the caboose, and pass over or along the cars or track of said carrier, or of connecting carriers, they shall do so at their own sole risk of personal injury from whatever cause; and neither the said carrier nor its connecting carriers shall be required to stop or start their trains or caboose cars at or from the depots or platforms, or to furnish lights for the accommodation or safety of the persons accompanying said stock to take care of the same under this contract."

Other provisions of the contract, necessary to a full understanding of the case, are as follows:

"The said shipper is at his own sole risk and expense to load and take care of and to feed and water said stock whilst being transported, whether delayed in transit or otherwise, and to unload the same; and neither said carrier nor any connecting carrier is to be under any liability or duty with reference thereto, except in the actual transportation of the same. * * * Said shipper shall see that all doors and openings in said car or cars are at all times so closed and fastened as to prevent the escape therefrom of any of the said stock, and said carrier or any connecting carrier shall not be liable on account of the escape of any of the said stock from said car or cars. The said carrier or any connecting carrier shall not be liable for or on account of any injury sustained by said live stock occasioned by any or either of the following causes, to wit: overloading, crowding one upon another, kicking or goring, suffocating, fright."

Nichols must be understood to have signed the contract as the agent of the shipper, and he made no objection to it, and is bound by it so far as one can be bound by a contract with his employer to which he does not object. What we have stated comprises the whole case so far as it is essential to the issues before us.

The defendant below excepted to a refusal of the court to rule that the burden was on the plaintiff below to prove that he was not guilty of contributory negligence, claiming that the case is excepted from the general rule of the federal courts, because the plaintiff below alleges in his declaration that he was "in the exercise of due care." None of the numerous rulings of the supreme court to the effect that, on this question, the burden is on the defendant, commencing with Railroad Co. v. Gladmon, 15 Wall. 401, have ever deemed it necessary to notice the state of the pleadings in this particular; and the rule has been constantly applied in this circuit to cases removed from the state courts, where this allegation frequently appears. The rule has more relation to the orderly trial of a case than to the state of the pleadings, and to shift from and to it from time to time would cause a great judicial inconvenience, wholly unnecessary, as the allegation referred to may better be regarded as surplusage than as leading to a variance.

The defendant below also duly excepted because the court below refused its request to direct a verdict in its favor. The respective duties of the court and jury with reference to questions of this character have been stated so many times by the supreme court and by us that we have no occasion to do more than refer to Dunlap v. Railroad Co., 130 U. S. 649, 9 Sup. Ct. 647; Railway Co. v. Schumacher, 152 U. S. 77, 14 Sup. Ct. 479; Southern Pac. Co. v. Pool, 160 U. S. 438, 16 Sup. Ct. 338; Warner v. Railroad Co., 168 U. S. 339, 18 Sup. Ct. 68; Monroe v. Insurance Co., 3 C. C. A. 280, 52 Fed. 777; and De Lorica v. Whitney, 11 C. C. A. 355, 63 Fed. 611. The extracts we have given from the special contract with the shipper make it plain that it was in the contemplation of all parties that a man in charge should accompany the cattle, and it is of no consequence to this case whether the carriage of the cattle included his fare, or whether it was to be paid in addition thereto. It is too well settled to need discussion that no question arising from the fact that he did or did not pay special fare is material. Railroad Co. v. Derby,

14 How. 468; The New World, 16 How. 469; Railroad Co. v. Lockwood, 17 Wall. 357; and Railway Co. v. Stevens, 95 U. S. 655.    It is also settled that, even in this class of cases, as applied to drovers on cattle trains, the usual rule of diligence on the part of carriers applies,—Railroad Co. v. Horst, 93 U. S. 291,—though, as we think, subject to some modifications in its application, arising from the necessary conditions of the service, recognized in the special contract at bar.    We must also accept as a settled rule that contracts relieving common carriers from their common-law liabilities, so far as public policy allows them to be relieved, are to be strictly construed against the carriers.    Compania La Flecha v. Brauer, 168 U. S. 104, 118, 18 Sup. Ct. 12, contains the latest of many expressions of the supreme court on this topic.

Starting with these rules, the solution of the case is not difficult. The defendant below relies on the provisions of the special contract with the shipper, to which we have referred, and on the claim that Nichols was guilty of contributory negligence in getting upon the train, while in motion, in the manner in which he did.    Passing by all questions of privity as between the parties to this suit with reference to the special contract, but applying the rules which we must apply in construing exemptions stipulated for by carriers, we think the case is not within the provisions relied on.    The only ones pointed out to us in this connection are that which relates to men in charge of cattle who leave the caboose and pass over or along the cars and tracks, and that relieving the carrier from all obligations with reference to depots, platforms, and lights.    We cannot think these provisions are unreasonable, or contrary to public policy, if fairly construed.    Traffic of this character would be made unduly expensive, and would seriously obstruct the proper passenger traffic, if it could not be conducted as ordinary freight traffic is conducted, notwithstanding the presence of men in charge of cattle who are not in the employ of the carrier.    But no permissible construction of the exemptions stipulated for in this case could extend to anything beyond the ordinary hazards peculiar to the running of cattle trains and freight trains, and to freight yards; and the water spout, permitted to project as shown by this record, has nothing to do with that topic.

With reference to the question of contributory negligence, the special contract with the shipper has much force.    It particularly insists that all the care which the stock may require shall come from the men in charge; and, by expressly exempting the carrier from furnishing depots or platforms or lights, it impliedly assured the men in charge that they must, and therefore might, do their work about the train as best they could.    The carrier expressly threw on them the performance of all duties relating to feeding and watering, and to the emergencies of crowding, kicking, goring, or suffocating.    The nature of the transportation, and the provisions of the special contract to which we have referred, make it clear that these duties were to be performed by the men in charge of the stock under such circumstances that they could not receive the opportunities for egress and ingress from and to the train incident to passenger traffic.    There-

fore, there is no presumption that all the rules applicable to boarding passenger trains reach the case at bar; and, so far as this record shows, the questions whether, and how far, they are applicable, necessarily left much to the jury, under proper instructions, which, in the absence of specific exceptions to the charge, we must assume were given. Moreover, the late determination of the supreme court in Railroad Co. v. Egeland, 163 U. S. 93, 16 Sup. Ct. 975, shows that, even as applied to moving passenger trains, the rules as to contributory negligence are not so rigid as claimed by the plaintiff below. We may also add that, even if the plaintiff below was guilty of negligence, it does not follow that it was contributory to the injury at bar, which was not the ordinary consequence of boarding a moving train. We are, however, content to rest the case, so far as this point is concerned, on the distinction to which we have referred between ordinary passenger traffic and traffic of the kind at bar, accompanied by the stress which the special contract with the shipper, and the condition of the stock as described in the extracts we have made from the evidence of the plaintiff below, laid upon him. Railway Co. v. Elliott, 5 C. C. A. 347, 55 Fed. 949, relied on by the defendant below, does not appear to us analogous. In the case at bar the conductor knew that the plaintiff below was to attend to his stock at the station where the injury happened, while in the case cited the conductor had no reason to apprehend that the person injured was in a position where he needed to be provided for. None of the other authorities cited, and not noticed by us, are of weight as against the decisions and well-settled rules which are binding on us. The judgment of the circuit court is affirmed, with the costs of this court for the defendant in error.