CHICAGO & N. W. RY. CO. v. KENDALL.

(Circuit Court of Appeals, Eighth Circuit. February 9, 1909.)

No. 2,750.

1. COURTS (§ 376*) — FEDERAL COURTS—STATE LAWS AS RULES OF DECISION—
QUESTIONS OF PROCEDURE.

The question whether a court has at common law the power to compel a plaintiff in an action for a personal injury to submit to a surgical examination is a matter of practice and not of evidence, and, as a matter of practice relating to the power of courts, neither state statutes nor the decisions of state courts on the subject are binding on federal courts under Rev. St. § 721 (U. S. Comp. St. 1901, p. 581), providing that, with certain exceptions, the laws of the several states shall be regarded as rules of decision in trials at common law in such courts, which as to such matters are governed by the decisions of the Supreme Court of the United States.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 984; Dec. Dig. § 376.*

State laws as rules of decision in federal courts. see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2.** COURTS (§ 376*) — FEDERAL COURTS — STATE LAWS AS RULES OF DECISION—
CONFORMITY STATUTE.

Under the conformity statute (Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]), decisions of state courts, unless made in construing local statutes, have never been regarded as controlling in the national courts, and neither under said section nor section 721 (U. S. Comp. St. 1901, p. 581), providing that with certain exceptions the laws of the several states shall be regarded as rules of decision in the courts of the United States, are state decisions construing the common-law rules of evidence obligatory on such courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 984; Dec. Dig. § 376.*]

**3.** DAMAGES (§ 206*)—EVIDENCE—PHYSICAL EXAMINATION OF PERSON INJURED
—POWER AND DUTY OF COURT TO REQUIRE EXAMINATION.

Where the plaintiff, in an action for an injury to his knee, while on the witness stand voluntarily exhibited the injured knee for inspection by the jury, the defendant is entitled to require him to submit the same to a surgical examination, and the court has power independently of any statute to compel such submission.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 531; Dec. Dig. § 206;* Discovery, Cent. Dig. §§ 92, 93.]

In Error to the Circuit Court of the United States for the Northern District of Iowa.

James C. Davis (Grimm, Trewin & Robbins and A. A. McLaughlin, on the brief), for plaintiff in error.

William Smyth (J. W. Jamison and C. J. Lynch, on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. This is an action to recover damages for personal injury. In his complaint plaintiff alleges that while he was stepping from a passenger train of the defendant, after it had stopped at the station for which he held passage, and the brakeman had called out the name of the station, the train was suddenly and violently backed, and he was thereby thrown down and his knee seriously and permanently injured. On the trial he took the witness stand in his own behalf, and while undergoing cross-examination was asked to expose his knee to the jury for inspection. Objection was at first made, but after some colloquy his counsel directed him to comply with the request. A question was then raised as to whether the injured knee was different from the other knee, and a juryman suggested that that matter could be better determined by an examination of the other knee, and thereupon plaintiff exposed that knee also. Counsel for defendant then addressed to plaintiff, while on the witness stand, the following question:

"Q. I have in the courthouse two reputable physicians Dr. D. S. Fairchild, of Clinton, and Dr. J. S. Ristine, of Cedar Rapids. I ask you now, with your knees exposed, whether you will permit these two physicians, in the presence of the jury, to examine you?"

This question was objected to by counsel for plaintiff, but the court overruled the objection, and required an answer. Thereupon the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiff answered, "Not at this place," and immediately afterwards refused to permit any examination by the physicians. Counsel for defendant then presented a motion in writing that plaintiff be required to submit his knee to the examination of physicians selected by the defendant, either in open court, or at some other place, before the conclusion of the trial. On the following morning, counsel for plaintiff filed written objections to the granting of the motion, and the court announced its ruling as follows:

"As I understand, in this matter the court has no power to require a party to submit to a physical examination, except in those states where the local statute authorizes it, and there is no such statute in Iowa. The application will be denied."

To this ruling an exception was duly reserved, and the same now presents the only error urged in this court for the reversal of a judgment in favor of plaintiff.

The Supreme Court of Iowa, in Schroeder v. Chicago, Rock Island & Pac. R. R. Co., 47 Iowa, 378, decided that at common law, and independent of statute, the court had power, in an action for personal injuries, to compel the plaintiff to submit his body to the examination of physicians selected by the court or by the defendant, for the purpose of ascertaining the nature and permanency of the injuries. In Union Pac. R. R. Co. v. Botsford, 141 U. S. 250, 11 Sup. Ct. 1000, 35 L. Ed. 734, the Supreme Court decided that federal courts do not possess such power. Defendant now contends (1) that the Botsford Case is overruled by Camden Railway Co. v. Stetson, 177 U. S. 172, 20 Sup. Ct. 617, 44 L. Ed. 721; (2) that the question involved relates to a matter of evidence, and that as to such matters the decisions of the highest court of the state in which the action is tried constitute "laws" within the meaning of section 721 of the Revised Statutes of the United States. (U. S. Comp. St. 1901, p. 581), and are therefore binding upon the federal courts. Considering now the first contention, the opinion in the Botsford Case is based upon three grounds: (1) That at common law a court has no power to compel plaintiff in an action for personal injuries to submit his body to examination. (2) That such a practice would be a violation of the seventh amendment of the Constitution, which declares that in all suits at common law, where the value in controversy shall exceed $20, trial by jury shall be preserved. (3) That such a practice would be a violation of Section 861 of the Revised Statutes (U. S. Comp. St. 1901, p. 661) and other sections defining the manner of taking depositions. Since the case of Camden Railway Co. v. Stetson, 177 U. S. 172, 20 Sup. Ct. 617, 44 L. Ed. 721, the last two of these grounds can no longer be regarded as tenable. In that case a statute of New Jersey authorizing such a practice was held to be binding upon the federal courts sitting in that state, and it was expressly ruled that such a statute did not violate either the federal Constitution or any federal statute. The other ground of decision, viz., the want of power, is not overruled, but, on the contrary, is expressly reaffirmed. The court says on that subject:

"It is settled in this court that no power to make such an order exists at common law; in other words, the court has no inherent power to make it"— citing the Botsford Case.

As to defendant's second contention, that the decision of the Supreme Court of Iowa upon a question of evidence is a "law" within the meaning of section 721 of the Revised Statutes, we observe first that the question here raised is not of that character. It could not be contended that the testimony of a skilled physician based upon an inspection of the injured member would not be relevant evidence as to the nature and permanency of the injury. The question is not whether such testimony would be admissible in evidence, but whether the court has, at common law, the power to compel the plaintiff to submit to a surgical examination. We are therefore presented with a matter of practice rather than a rule of evidence. Neither court purports to deal with the question as a subject of local law. The Botsford decision is not based upon any statute or decision of the state in which the action arose. Nor does the Supreme Court of Iowa rely upon any consideration peculiar to that state. Both courts appeal to the general common law as the source of their decision. They are in direct conflict. Which authority should a federal court sitting in Iowa obey? When the point is thus presented, the answer is plain. One of the important functions of the Supreme Court is to declare the powers of inferior federal courts, and, when it has spoken on such a subject, its decision for those courts is final, anything in the decisions of state courts to the contrary notwithstanding.

Being a matter of practice relating to the power of courts, neither state statutes nor the decisions of state courts on the subject are binding on federal courts under section 721 of the Revised Statutes. This was early decided by the Supreme Court in Wayman v. Southard, 10 Wheat. 1, 6 L. Ed. 253. It was there held that section 34 of the judiciary act, being the same as section 721 of the Revised Statutes—

"does not apply to the process and practice of the federal courts; it is a mere legislative recognition of the principles of universal jurisprudence as to the operation of the lex loci."

Previous to the conformity act of 1872, c. 255, 17 Stat. 196, the practice of federal courts in actions at law was wholly independent of current state statutes and state decisions. Combining the provisions of the temporary judiciary act of September, 1789, c. 20, 1 Stat. 92, and the process act of 1792, c. 36, 1 Stat. 275, it was provided that the practice at common law in the federal courts for the 13 original states should be that which obtained in the Supreme Courts of those states respectively in the month of September, 1789. As new states were admitted to the Union, other statutes were passed fixing the practice in the highest courts of those states at an arbitrary time as the practice in the federal courts when sitting in those states. Wayman v. Southard, 10 Wheat. 1, 6 L. Ed. 253; Conkling's Treatise (1870) page 323 et seq. So long as the common-law system was in vogue in all the states of the Union, little embarrassment was experienced in applying the practice thus established for the federal

courts. But in 1848 the reform procedure was introduced in New York by the Code of that year, and by 1860 similar codes had been adopted in most of the states of the Union. When a generation of lawyers had grown up under these codes knowing nothing of the common-law practice, the burden of acquiring that practice for the few cases which they had in the federal courts became intolerable. To meet that difficulty, section 914 of the Revised Statutes was passed in 1872 (U. S. Comp. St. 1901, p. 684), requiring federal courts to observe the state practice in actions at common law, "as near as may be." Lamaster v. Keeler, 123 U. S. 376–387, 8 Sup. Ct. 197, 31 L. Ed. 238; Indianapolis & St. Louis Railroad Company v. Horst, 93 U. S. 291–299, 23 L. Ed. 898; Nudd v. Burrows, 91 U. S. 426–441, 23 L. Ed. 286. It is manifest, therefore, that, as to a matter of practice such as we are considering, the federal courts can derive no power under section 721 of the Revised Statutes from either the decisions or the statutes of the states. Such a rule, if obligatory on the federal courts, must come in under section 914, commonly known as the "Conformity Act." But under that section decisions of state courts, unless made in construing local statutes, have never been regarded as controlling in the national courts. Even local statutes on the subject of procedure have been rejected by those courts whenever in their judgment such statutes would unwisely incumber the administration of justice. Collin County National Bank v. Hughes, 155 Fed. 389, 83 C. C. A. 661. Treating the question before us, therefore, as relating to practice, we are clearly of the opinion that the Iowa case cited was not binding upon the trial court.

If, however, we should view the present case as involving a rule of evidence, as defendant insists we should, our conclusion would not be different. In several decisions of the Supreme Court there are found expressions to the effect that decisions of the highest courts of the states on questions of evidence are rules binding upon the federal courts sitting in those states. All of these statements, however, were made either by way of illustration, or in the construction of state statutes. The point has never been directly involved, and passed into judgment as to state decisions touching a general common-law rule of evidence. Vance v. Campbell, 1 Black, 427, 17 L. Ed. 168, Wright v. Bales, 2 Black, 535, 17 L. Ed. 264, and Ryan v. Bindley, 1 Wall. 66, 17 L. Ed. 559, are based on section 310 of the Code of Civil Procedure of Ohio (Rev. St. 1880), permitting a party to be a witness. McNiel v. Holbrook, 12 Pet. 84, 9 L. Ed. 1009, is based on a statute of Georgia. Conn. Life Ins. Co. v. Union Trust Co., 112 U. S. 250, 5 Sup. Ct. 119, 28 L. Ed. 708, involved the construction of the statute of New York, defining the privilege of physicians from testifying. Ex parte Fisk, 113 U. S. 713, 5 Sup. Ct. 724, 28 L. Ed. 1117, involved the federal statute and the statute of New York on the subject of examining parties before trial. Bucher v. Cheshire Railroad Co., 125 U. S. 555, 8 Sup. Ct. 974, 31 L. Ed. 795, turned upon the statute of Massachusetts forbidding travel on the Lord's Day except for necessity or charity. Gormley v. Clark, 134 U. S. 338, 10 Sup. Ct. 554, 33 L. Ed. 909, presented a question arising under the statute of Illinois, prescribing a method of establishing titles whose records were

destroyed by the Chicago fire. Claiborne County v. Brooks, 111 U. S. 400, 4 Sup. Ct. 489, 28 L. Ed. 470, and Detroit v. Osborne, 135 U. S. 492, 10 Sup. Ct. 1012, 34 L. Ed. 260, involved the powers of municipal corporations, and the settled rule is applied that the decisions of the highest courts of the states on that subject are binding upon the federal courts, "for it is a question that relates to the internal constitution of the body politic of the state."

In Nashua Savings Bank v. Anglo-American Co., 189 U. S. 221, 23 Sup. Ct. 517, 47 L. Ed. 782, the question is more nearly passed upon. It is there said:

"The laws of the several states with respect to evidence within the meaning of this section apply not only to the statutes, but to the decisions of their highest courts."

The question is not otherwise considered in the case, and the decisions cited to support the statement all involved statutes of the states in which the actions arose. The language just quoted was not necessary to the determination of the question before the court. The matter there under consideration was whether the testimony of an English lawyer could be received as to numerous English statutes relating to private corporations and the liabilities created thereby. While the weight of authority is that the contents of a single foreign statute can only be proven by a properly authenticated copy thereof, the better authority is that, where the question before the court relates to the result of numerous statutes, expert testimony is receivable, the same as in the case of the common law of a foreign state. In this circuit it was held upon full consideration in Union Pacific Railway Company v. Yates, 79 Fed. 584, 25 C. C. A. 103, 40 L. R. A. 553, that "the decisions of the courts of a state construing common-law rules of evidence are not obligatory on the federal courts." A contrary doctrine was declared in the Seventh Circuit, in Stewart v. Morris, 89 Fed. 290, 32 C. C. A. 203.

We do not consider the question as settled by any decision of the Supreme Court of the United States. In the case of Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865, decided in 1842, that court declared that the decisions of state courts relating to general commercial law were not "laws" within the meaning of section 721 of the Revised Statutes. That term as applied to local decisions was there confined either to the construction of statutes, or to the enforcement of strictly local customs or rules governing the title, possession, descent, or sale of property. The subject was re-examined with great learning in a prevailing and dissenting opinion in the case of Baltimore & Ohio R. R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772, and it was there declared that the decisions of the highest court of a state on the subject of negligence are not laws within the meaning of section 721. The basis of decision in these cases was this: That the general rules of commercial law and of the law of negligence had been the creation of the courts, and that the federal judiciary could not accept the law on such a subject from state courts without being placed in a position of direct subserviency to those courts. To maintain their own dignity and independence, it was therefore de-

clared to be their duty to exercise an independent judgment on such subjects. The common-law rules of evidence come clearly within the principle which was controlling in those decisions. In fact, no branch of the law has been so completely rationalized as the common-law rules of evidence. Though Sir Fitzjames Stephen generalized too broadly when he said that the rules of evidence are simply John Stuart Mill's Logic applied in the field of law, still there is a substantial basis of truth for his statement. Those rules have not been derived from local usage, but have at all times been purely the creation of courts. In declaring them, judges have not appealed to the "customs of the realm" as the source of the rule; on the contrary, they have laid down the rules as the result of their own judgment touching what proof is fit for the consideration of a jury, and what scope of inquiry is compatible with the reasonable dispatch of justice. It might well be urged, as it was by the dissenting judges in the Tyson and Baugh Cases, that the rules there involved were the result of the local custom of merchants, or the local conditions of commerce and manufacture. No such considerations can be put forth as to the common-law rules of evidence. They emanate from the mind of judges, and not from the practices of the business world. Every reason, therefore, which led the Supreme Court to declare the duty of federal courts to exercise an independent judgment as to matters of general commercial law, and the general common law of negligence, is present with added force as to the common-law rules of evidence. When a state court construes the Constitution or statutes of the state, or enforces a local right of property, the rule emanates not from the decision of the court, but from the Constitution, statute, or local custom. Such, as we have already indicated, is not the fact in regard to rules of evidence. They emanate wholly from the courts. To compel the federal judiciary to accept rules on such a subject from the decisions of local courts is to place them in a position of direct tutelage to such courts, and to rob them of the dignity and independence of judgment which has heretofore been regarded as an indispensable part of their jurisdiction.

But perhaps the best way to ascertain whether state decisions on the subject of evidence are binding upon federal courts is to consider how the Supreme Court and federal Courts of Appeal have dealt with questions of evidence when directly presented for decision. Have they, as in the case of statutes and rules of property, looked to the decisions of the state in which the action arose as laws of controlling authority? The case of Vicksburg & Meridian R. R. Co. v. O'Brien, 119 U. S. 99, 7 Sup. Ct. 118, 30 L. Ed. 299, turned wholly upon questions of evidence. Numerous authorities are cited from England and the states of the Union in the prevailing and dissenting opinions, but no decision is cited from the state in which the action arose, nor is any attempt made to deduce the rule of decision from local decisions. The same question arose again in Steamboat Co. v. Brockett, 121 U. S. 637, 7 Sup. Ct. 1039, 30 L. Ed. 1049. That case came from New York. The question had been repeatedly passed upon by the court of appeals of that state. Luby v. Hudson River R. R. Co., 17 N. Y. 131; Anderson v. Rome, W. & O. R. R. Co., 54 N. Y. 334. No

decision, however, from New York is cited, though decisions from Illinois and Indiana are referred to. The same question arose in this circuit in a case from Missouri, Fidelity & Casualty Co. v. Haines, 111 Fed. 337, 49 C. C. A. 379. Numerous authorities are cited, both state and federal, but none from Missouri. The question is treated wholly as one of general law. In the Sixth Circuit Court of Appeals, the same method of dealing with the subject is pursued in Peirce v. Van Dusen, 78 Fed. 693, 24 C. C. A. 280, 69 L. R. A. 705, in an opinion written by Mr. Justice Harlan.

Bates v. Preble, 151 U. S. 149, 14 Sup. Ct. 277, 38 L. Ed. 106, involved the use of memoranda as independent evidence. The case arose in Massachusetts, and the Supreme Court says that the highest court of that state had ruled the question against the admissibility of such evidence, and numerous cases are cited from that state in support of such a holding. They are not treated, however, as binding authorities upon the federal courts in deciding a case from that state. On the contrary, the decisions of other states are referred to, and the question is clearly stated as a question of general law. In fact, after reviewing authorities, state and national, the court announces this conclusion:

"We do not regard any of these cases as committing this court to the general doctrine that such memoranda are admissible for any other purpose than to refresh the memory of the witness."

If the decisions of the highest court of the state in which an action arose are "laws" upon questions of evidence, this opinion is quite inexplicable. The law would have been easily found in the decisions of Massachusetts referred to by the court, and the case would have been disposed of solely upon those decisions. The same question is brought under examination in Chicago Lumbering Co. v. Hewitt, 64 Fed. 314, 12 C. C. A. 129, a case arising in Michigan, and the cases carefully reviewed by the Sixth Circuit Court of Appeals. No attempt, however, is made to ascertain the holding of the Supreme Court of Michigan on the subject, although that court had repeatedly passed upon the question. Raynor v. Norton, 31 Mich. 210; Misner v. Darling, 44 Mich. 439, 7 N. W. 77; Mason v. Phelps, 48 Mich. 126, 11 N. W. 413, 837.

Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575, involved the admissibility in evidence against a defendant in a criminal case of his papers seized upon a search warrant. The case arose in New York. The highest court of that state had passed on the very question (People v. Gardner, 144 N. Y. 119, 38 N. E. 1003, 28 L. R. A. 699, 43 Am. St. Rep. 741; People v. Van Wormer, 175 N. Y. 188, 67 N. E. 299), but the Supreme Court treats it as a question of general law, makes no reference to the New York cases, but bases its opinion upon decisions from Massachusetts and New Hampshire.

Seitz v. Brewers' Refrigerating Machine Co., 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837, involved the admissibility of parol evidence in an action on a written contract to prove an independent oral agreement upon the same subject. This case also arose in New York, where the rule on the question involved had been greatly relaxed. Batterman v. Pierce, 3 Hill, 171; Johnson v. Oppenheim, 55 N. Y.

280; Chapin v. Dobson, 78 N. Y. 74, 34 Am. Rep. 512. These cases were cited as declaring the law of the state. The last case was directly in point in favor of the admissibility of the evidence. The Supreme Court, however, treated the question as one of general law, and refused to follow the local decisions. It based its ruling not only on previous decisions of its own, but on the decisions of other states in which the strict rule on the subject had been enforced, citing Naumberg v. Young, 44 N. J. Law, 331, 43 Am. Rep. 380; Thompson v. Libby, 34 Minn. 374, 26 N. W. 1.

The burden of proof on the issue of contributory negligence is clearly defined in the federal courts. On that subject, however, there is a clear conflict among the different states. In Chicago Great Western Ry. Co. v. Price, 97 Fed. 423, 38 C. C. A. 239, state decisions are held not to be controlling upon the federal courts. This court there said:

"The rule of the federal courts is settled and uniform that contributory negligence is an affirmative defense which must be established by a preponderance of evidence, and this requirement is not changed by the fact that a different rule prevails in the courts of the state where the cause of action arose."

In that case the accident occurred in Illinois, and the action was brought in Iowa. In both of those jurisdictions the rule prevails that the plaintiff in a personal injury case is bound to prove his freedom from contributory negligence. Missouri Furnace Co. v. Abend, 107 Ill. 44, 47 Am. Rep. 425; Burns v. Chicago, etc., R. R. Co., 69 Iowa, 450, 30 N. W. 25, 58 Am. Rep. 227. This court, however, refused to follow those decisions. The federal rule has been applied in Indiana, in contravention to the decisions of that state. Wabash, St. L. & P. R. Co. v. Central Trust Co. (C. C.) 23 Fed. 738; Indianapolis, etc., R. Co. v. Horst, 93 U. S. 291, 23 L. Ed. 898. The same is true of Massachusetts. Fitchburg R. Co. v. Nichols, 85 Fed. 945, 29 C. C. A. 500.

These illustrations might easily be multiplied. Sufficient, however, has been adduced to show the settled practice of the federal courts. A somewhat careful examination has failed to discover any instance in which a federal court has treated a local decision on a question of evidence as a rule of law of controlling force in opposition to a decision of the Supreme Court of the United States. Such a practice would, in our judgment, result in unnecessary labor and perplexity for federal judges in the trial of causes. It is the duty of such judges to be familiar with the decisions of the national courts. The rules of evidence are a part of the law that must in the main be carried in the mind of the trial judge. Such questions constantly recur, and must be promptly decided. To take time for argument and investigation would tediously prolong the trial. If those judges were compelled to keep track of local decisions and decide, perhaps, how far they vary from the decisions of appellate federal courts, their labors would be doubled, and the progress of the trial greatly impeded. These considerations receive added force at the present time from the fact that federal judges are so frequently called upon to sit in states other than their own. Again, local statutes and

local rules of property, when involved in suit, are presented once and for all, and thus permit of argument and full consideration. Such is not the case with questions of evidence. They are multiform, and generally not dependent upon the issues involved. For these reasons, we are satisfied that the practice which has heretofore obtained in federal courts is a sound practice, and that local decisions on questions of evidence ought not to constitute authoritative rules binding upon those courts. If, therefore, the question involved in the present case be regarded as a question of evidence, we are of the opinion that the decision of the Supreme Court in Union Pacific v. Botsford, 141 U. S. 250, 11 Sup. Ct. 1000, 35 L. Ed. 734, is binding upon federal courts, and, if applicable, should be the rule of decision in the present case, notwithstanding the decision of the Supreme Court of Iowa in Schroeder v. Chicago, R. I. & P. R. Co., 47 Iowa, 378.

Is the Botsford decision controlling of the present case? The defendant there, in advance of the trial, applied to the court for an order requiring the plaintiff to submit to a surgical examination. The application was denied, and that ruling constituted the question which was before the Supreme Court for review. That court has already limited the Botsford decision in Camden Railway Co. v. Stetson, 177 U. S. 172, 20 Sup. Ct. 617, 44 L. Ed. 721. The decision is at variance with a large majority of the state courts. The rule which it declares has been abrogated by statute in many jurisdictions where it once prevailed. This is the case in New York, New Jersey, Great Britain, Canada, and Australia. We do not feel, therefore, disposed to extend the decision beyond the facts there involved.

In the present case we are not dealing with an application for a surgical examination in advance of the trial. Here the plaintiff at the trial voluntarily exhibited his knee in open court for inspection. Having done this, it was beyond his power to arrest the investigation. The defendant and the court were entitled to employ any agency in its examination which would aid in the determination of the issue on trial. It is universally held that, where an inanimate object is produced upon the trial of a case, it is subject to any legitimate examination and test which will elucidate the matter in dispute. It may be submitted, for example, to chemical treatment, or to examination by the microscope. Simply looking at the plaintiff's knee with the eye of a layman furnished little aid in determining its condition. He himself maintained that there were no external evidences of injury. Whether there were hidden ailments could only be discerned by the skill of a surgeon, and the defendant and the court were as much entitled to turn the eye of a surgeon upon the plaintiff's knee as they would have been to look at a blood stain through a glass. Having exhibited his knee to the jury, it became a part of the evidence in the case, and the mere accident that the thing exhibited was part of a human body could only qualify, and not defeat, the right of complete investigation. Chicago, Rock Island & Pac. Ry. Co. v. Langston, 19 Tex. Civ. App. 568, 47 S. W. 1027, 48 S. W. 611; Haynes v. Trenton, 123 Mo. 326, 27 S. W. 622.

Whether the defendant in a personal injury case, when the plaintiff takes the stand and testifies in his own behalf, to his injuries, is en-

titled to an exposure and examination of the injured member as a part of the cross-examination, and whether upon the trial of such an issue the defendant may call the plaintiff as a witness, and while he is under examination compel such a disclosure and inspection of the injured member, are questions not presented by the present case, and are not, therefore, necessary for decision. See Larson v. Salt Lake City (Utah) 97 Pac. 483.

We think the court erred in its ruling refusing to compel the plaintiff to submit his knee to surgical examination, and for this error the cause is reversed, with directions to grant a new trial.

SANBORN, Circuit Judge (concurring). I concur in the result in this case, for the reasons stated in the foregoing opinion, and for the further reason that in my opinion the United States Circuit Court, sitting in a state where such is the practice and mode of proceeding in the state courts, is invested with the power by the conformity act (section 914, Rev. St.) to require one who brings an action at law for his personal injuries to submit his person to a physical examination by suitable physicians or surgeons, to qualify them to testify to the extent of his injuries. An instructive and rational change of opinion in regard to this subject is portrayed by the decisions of the Supreme Court pertinent to the question.

In 1884, in Ex parte Fisk, 113 U. S. 713, 724, 5 Sup. Ct. 724, 28 L. Ed. 1117, that court held in a unanimous opinion that although the state of New York authorized a litigant to take the testimony of his adversary before the trial, and although such was the practice in the courts of that state, the federal Circuit Court had no power to take such testimony, because sections 861, 863–870, Rev. St. (U. S. Comp. St. 1901, pp. 661–665), prescribed the only method of procuring evidence in actions at law in the courts of the United States, and excluded all other modes provided by the statutes of the states or the practice of their courts.

In 1890, in Union Pacific Railway Company v. Botsford, 141 U. S. 250, 256, 11 Sup. Ct. 1000, 1003, 35 L. Ed. 734, an opinion was rendered by a divided court, two judges dissenting, that a federal Circuit Court sitting in a state wherein there was no statute and no practice or mode of proceeding in the state courts permitting it had no authority to require a plaintiff in an action for his personal injury to submit to a physical examination by physicians before the trial, because (1) "this is not a question which is governed by the law or practice of the state in which the trial is held," (2) because, as held in Ex parte Fisk, the provisions of sections 861, 863, et seq., Rev. St., were exclusive, (3) because any such law or practice would be unconstitutional, and (4) because the person of such a plaintiff was too sacred.

In the year 1900, in Camden Railway Company v. Stetson, 177 U. S. 172, 20 Sup. Ct. 617, 44 L. Ed. 721, by a decision in which the minority in the last case were of the majority, and in which one of the majority in the last case was the minority, the Supreme Court held that a federal Circuit Court, sitting in a state in which the courts of the state were empowered by a state statute to compel the person in-

jured to submit, at or before the trial of an action for his injury, to a physical examination by physicians or surgeons, had like power by virtue of the state statute and section 721 of the Revised Statutes. That court thereby necessarily held, contrary to the decisions in Ex parte Fisk and in the Botsford Case, (1) that this is a question which under sections 721 and 914, Rev. St., is governed by the law or practice of the state in which the trial is held; (2) that the provisions of sections 861, 863, et seq., Rev. St., are not exclusive, but other practices and modes of procedure to obtain evidence may be pursued by the federal courts under state law or practice; (3) that a law or practice which empowers a federal court to compel such an examination is not unconstitutional; and (4) that the person of one injured which is not too sacred to be made the subject of an action for the recovery of damages for the injury is not too sacred to be made the subject of an examination by suitable professional gentlemen to ascertain and prove the truth regarding the injury.

In that case the Supreme Court, speaking of the order that the plaintiff should submit to an examination of his person by physicians or surgeons before the trial, said:

"It is settled in this court that no power to make such an order exists at common law: in other words, the court has no inherent power to make it. Union Pacific Railway Company v. Botsford, 141 U. S. 250, 11 Sup. Ct. 1000, 35 L. Ed. 734."

That is to say, as I understand it, that in the absence of a state law adopted by section 721, or of a state practice or mode of procedure which the federal court is empowered and directed by section 914 to follow, such a court has no inherent power to order the physical examination of the injured person in an action before it for the injury. And this, it seems to me, is all there is left of the Fisk and Botsford Cases since the decision in the Camden Case, 177 U. S. 172, 20 Sup. Ct. 617, 44 L. Ed. 721.

That decision certainly is that where there is a state statute which authorizes the courts of the state to compel such an examination, section 721, Rev. St., which makes the laws of the state rules of decisions in trials at common law in the national courts, empowers those courts to compel such examinations. By the same mark, where the practice and mode of proceeding in the state courts to qualify witnesses, to give truthful testimony regarding an injury to the person, which is the subject of an action, are to require such persons to submit to such an examination, section 914, Rev. St., which requires that the practice and modes of proceeding in a national court in such cases shall conform as near as may be to the practice and modes of proceeding in like causes in the courts of the state in which such federal court is held, grants plenary power to the national court to direct the injured person to submit to an examination by proper physicians or surgeons.

It is true that section 914 does not compel the federal courts to adopt methods of practice or modes of proceeding existing in the state courts "which in their judgment would unwisely incumber the administration of the law, or tend to defeat the ends of justice in

their tribunals." Indianapolis & St. Louis R. R. Co. v. Horst, 93 U. S. 291, 23 L. Ed. 898. But it empowers them to do even that, and, with that exception, it requires them to conform their practice and modes of proceeding "to the practice * * * and modes of proceeding existing at the time in like causes in the courts of record in the state within which such Circuit or District Courts are held." This case does not fall within the exception, because it would not unwisely incumber, but would facilitate, the administration of the law, and it would not tend to defeat, but it would tend to accomplish, the ends of justice, to require one who submits his person to the examination of physicians, to qualify them to testify in his behalf, to submit it also to the examination of like witnesses to qualify them to testify to the truth on behalf of the defendant. This case falls under the general rule, and section 914 gave the court below ample authority to compel the examination.

Nor does there seem to me to be any material question in this case relative to the power at common law of any court, state or federal, to compel a person injured to submit to such an examination of his person in an action for his injury. Let the fact be conceded that the Supreme Court was right, and the Supreme Court of Iowa was wrong, in the decision of that question (Union Pacific Railway Co. v. Botsford, 141 U. S. 250, 11 Sup. Ct. 1000, 35 L. Ed. 734; Schroeder v. Chicago, Rock Island & Pacific Ry. Co., 47 Iowa, 378); nevertheless the decision of the Supreme Court of Iowa, though erroneous, was within its jurisdiction, and it conclusively established the practice and the mode of proceeding to qualify witnesses to give testimony, and to procure evidence in the courts of that state in cases of this character. Congress had the same power to authorize and require the federal courts to conform their practice and modes of proceeding in such cases to the practice and modes erroneously, as to those correctly, existing in the state courts, and it exercised that power. It might have enacted that the national courts should conform their practice and modes of proceeding to the practice and modes of proceeding rightly adopted by the state courts, but it did not do so. It empowered and required the United States Circuit Courts to conform their practice and modes of proceeding in actions at law to the practice and modes of proceeding existing at the time (whether rightly or wrongly adopted) in the courts of the state in which they were sitting. There is no doubt that the practice and mode of proceeding existing at the time in like causes in the courts of the state of Iowa were to require the injured party to submit his person to the examination of suitable physicians and surgeons to the end that the truth might be discovered and proved (Schroeder v. Chicago, Rock Island & Pacific Ry. Co., 47 Iowa, 378), and in my opinion section 914 empowered and required the federal Circuit Court sitting in that state to follow that practice and mode of proceeding.

This conclusion conforms the practice in such cases to the general rule that:

"A party forfeits nothing by going into a federal tribunal. Jurisdiction having attached, his case is tried there upon the same principles, and its

determination is governed by the same considerations. as if it had been brought in the proper state tribunal of the same locality." Ex parte McNiel, 13 Wall. 236, 243, 20 L. Ed. 624; Davis v. Gray, 16 Wall. 203, 221, 21 L. Ed. 447.