MAGNOLIA PIPE LINE CO. v. RICKS.

No. 30117.   Nov. 4, 1941.

Rehearing Denied Feb. 3, 1942.

*121 P. 2d 570.*

Walace Hawkins, of Dallas, Tex., B. B. Blakeney, W. R. Wallace, B. B. Blakeney, Jr., all of Oklahoma City, and Brown Moore, of Stillwater, for plaintiff in error.

Springer & Springer, of Stillwater, for defendant in error.

BAYLESS, J. Magnolia Pipe Line Company appeals from a judgment of the district court of Payne county in favor of Billy Lyle Ricks, a minor, represented by his father as next friend.

About May 17, 1937, plaintiff fell into an open pipe line ditch of defendant and injured his hip. Continual complaints of pain caused his parents to take him to a doctor about June 8th. The doctor discharged the boy as recovered about June 28, 1937. Pursuant to previous agreement to compromise and settle the issue of liability and the extent of injury and amount of damage, the father, as next friend of his son, filed action No. 13573, "Billy Ricks, a minor who sues by his father and next friend, W. J. Ricks, plaintiff, vs. Magnolia Pipe Line Company, a corporation, defendant," in the district court of Payne county on July 1, 1937. On the same day an answer was filed by the named defendant and a judgment entered finding $50 damages, $45 doctor bill, and $25 attorney fee, in all $120, which was paid and the judgment released. It appeared the boy continued to suffer, and about January, 1938, he was again taken to the doctor, who, after examination, decided the boy was suffering from Perthes' disease, (Osteochronditis of the hip," Gould's Medical Dictionary, 3rd Ed.), and later examinations confirmed this diagnosis. For the purposes of this opinion we may state the medical experts all agreed this disease usually left permanent result in the nature of a shortened leg with attendant and progressive body maladjustments.

October 19, 1938, the present action was filed containing two causes: (1) for damages and (2) to set aside the previous judgment. As stated above the father again acted as next friend.

Issue was joined, and after hearing evidence on the second issue the trial judge set aside the previous judgment, and after a trial on the first issue the jury returned a verdict for plaintiff, and this appeal followed.

Magnolia first contends that the order vacating the judgment in the previous action was erroneous. Plaintiff insists that this contention cannot be made at this time because the order vacating the previous judgment was an appealable order under the authority of Pennsylvania Co. v. Potter, 108 Okla. 49, 233 P. 700; Halliburton v. Williams, 166 Okla. 248, 27 P. 2d 360, and Ambrister v. Donehew, 183 Okla. 595, 83 P. 2d 544, and was made more than six months prior to the filing of the petition in error in this case. Magnolia relies upon Vann v. Union Central Life Insurance Co., 79 Okla. 17, 191 P. 175; Wells v. Shriver, 81 Okla. 108, 197 P. 460, and Attaway v. Watkins, 171 Okla. 102, 41 P. 2d 914, as authority for the conten-

tion that (1) Pennsylvania Co. v. Potter, supra, extended no further than holding that the order vacating a judgment, in that case and as in this case, may be appealed and does not go to the extent of holding that it must be appealed; or (2) for the rule stated in Vann v. Union Central, supra, that the order is appealable if it refuses a motion to vacate, but interlocutory if it vacates the judgment. While Magnolia relies on Attaway v. Watkins, supra, nevertheless we think it is more nearly in keeping with the line of authorities cited by plaintiff. Insofar as we have been cited or have found our prior decisions, it seems this is the first case since Pennsylvania Co. v. Potter, supra, was promulgated where the party treated the order vacating the judgment as interlocutory and attempted to save the issue to be presented on the later appeal. All of the cases cited, beginning with Pennsylvania Co. v. Potter to this day, appear to be cases in which motions were filed with this court to dismiss the appeals upon the ground that the order vacating the judgment was interlocutory. We have consistently held to the rule stated in Pennsylvania Co. v. Potter that the order vacating the judgment is appealable and have consistently refused to dismiss appeals where the order was asserted to be interlocutory. We interpret the word "appealable" to imply that an appeal is obligatory and not permissive. See Ambrister v. Donehew, supra. We therefore hold that the order of June 6, 1939, vacating and setting aside the previous judgment was a final order in the nature of an order granting a new trial, and if Magnolia desired to question the correctness of the court's ruling, it was necessary to prosecute an appeal from that order within the time specified by law; and, when it waited, and attempted to present the issue upon the appeal before us from the second judgment, the time within which it could appeal from the order of June 6, 1939, expired and its right to present the contention has been lost.

Coming to the issues presented in the petition in error and brief of Magnolia relating to the merits of the second action, we notice that it makes but two contentions: (1) There is no proof of actual negligence and (2) evidence offered on its behalf was improperly excluded.

In discussing the first contention we think it is necessary to go more into detail respecting the facts. The father of the minor defendant occupied the northeast quarter of the northeast quarter of a section. There was a road located on the section line running north and south along the east side of this place, which road turned east at the northeast corner of the forty. The section line running east and west along the north side of the section had not been open for road use. Many years ago Magnolia laid a four-inch pipe line across the north side of this forty some eight or ten feet south of the fence, which approximately rests on the section line. It is Magnolia's contention, and seemingly is not disputed by plaintiff, that the pipe line and the pond hereafter spoken of would be in the public road if one were opened according to law along this north section line. After the pipe line had been laid, Mr. Ricks dug a small pond near the northeast corner of the forty and the dike or dam of the pond is along the north side of the pond, in the shape of a half moon facing south, and covered the pipe line of Magnolia. Sometime in April, 1937, Magnolia took up the pipe line across this 40-acre tract and in so doing it was necessary to open a ditch which has been described as being 18 to 20 inches wide and from 36 to 40 inches deep. This ditch was opened where the dike or dam of the pond covered the pipe line. The testimony on the part of the plaintiff is that the family home was five or six hundred feet south of the pond, the family went to the pond daily to get water for stock use and to irrigate the garden and for other purposes and there was a well-defined path leading from the house to the northwest side of the pond, at which point water was dipped from the pond. The plaintiff's testimony further shows

that the ditch, which was open as aforesaid, crossed this path. On the day in question the minor plaintiff accompanied his father to this pond, where the father did some shovel work about the pond, and each procured a bucket of water and started toward their home. It was necessary for them to cross this ditch and the father testified that the boy stepped on some loose dirt and fell into the ditch, to his injury. To sustain its contention that it was guilty of no negligence, Magnolia asserted that the ditch was not a dangerous place, that it had a right to open the ditch in connection with its usual and ordinary business, that the ditch was not opened in a negligent manner, and it did not constitute an act of negligence on its part during the time it was open. Its witnesses expressly testified that it had been refilled prior to the date on which the minor plaintiff claims to have fallen into it.

Insofar as these controverted facts are concerned, the jury's verdict is conclusive. We must take as an established fact the open ditch and the minor plaintiff falling thereinto to his injury.

Magnolia quotes instruction No. 8, the gist of which is: (1) Magnolia had a right to open the ditch to remove the pipe and in so doing was obliged to use ordinary care and caution to prevent injury to others; (2) plaintiff had a right to be at the place where the incident occurred; (3) it was Magnolia's duty "to exercise ordinary care and caution to avoid the creation of conditions dangerous to others and to take into consideration the nature, width, and depth of the ditch and its location to the plaintiff's premises and such knowledge as the defendant had as to the use of the premises in the vicinity of the ditch." Magnolia argues as a matter of law that the ditch was not a hidden or unexpected place, that it was "obviously a ditch" and that the plaintiff's evidence that he and others of the family knew the ditch was there and had crossed it before must cause us to say that there was no evidence from which a jury would be warranted in finding that the existence of this open ditch amounted to negligence. In this connection Magnolia insisted that, since both it and plaintiff had a right to be there, its only duty was to warn him with respect to hidden and undiscovered dangers. This argument verges on a rule of law similar to that discussed in City of Tulsa v. Frye, 165 Okla. 302, 25 P. 2d 1080, and later cases, wherein we discussed particular conditions of such size or character as to constitute no negligence as a matter of law or to constitute a condition about which the minds of reasonable men differ, necessitating submitting the issue of negligence to the jury.

We are of the opinion that the opening of a ditch of this character at the place where it was open and the leaving of the ditch open under the circumstances shown by the plaintiff's testimony presents an instance where the minds of reasonable men might differ as to whether Magnolia used the care and caution that an ordinarily prudent man would use. Therefore, the trial court was correct in submitting the issue to the jury and in instructing the jury as it did and in declining to give Magnolia's requested instruction No. 12, which embodied the theory of hidden dangers.

We come now to Magnolia's second contention. On this point Magnolia attempted to show by the family physician of the minor plaintiff that the family had failed to heed his advice with respect to care of the injured plaintiff, and it appears that Magnolia hoped thereby to show that the succeeding consequences were the result of the negligence of the parents of the minor plaintiff, for which it should not be held responsible. We do not believe it was an error to exclude this offered testimony, because the minor plaintiff against whom the evidence would be effectual was a child seven years of age at the time and we are unwilling to say the law justifies penalizing the child, who was injured by Magnolia, for the failure of the child's parents to minimize the consequences of the injury. Lone

Star Gas Co. v. Parsons, 159 Okla. 52, 14 P. 2d 369. If the plaintiff had been an adult, such an issue might be raised, because an adult can be held responsible for intervening causes that distort the conditions brought about by another's negligence. Obviously a child of tender years cannot do so.

The judgment is affirmed.

WELCH, C. J., CORN, V. C. J., and OSBORN, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. RILEY, J., absent.