PHILLIPS PETROLEUM CO. et al.
v. MYERS.

No. 32337. May 3, 1949.

Rehearing Denied Nov. 1, 1949.

*210 P. 2d 944.*

152

Don Emery, Rayburn L. Foster, R. B. F. Hummer, and D. E. Hodges, all of Bartlesville, and Pliny S. Frye, of Wewoka, for plaintiffs in error.

Homer H. Bishop, of Seminole, Hugh M. Sandlin, of Holdenville, and O. A. Cargill, James R. Eagleton, and O. A. Cargill, Jr., all of Oklahoma City, for defendant in error.

O'NEAL, J. This is an appeal from a judgment for damages for personal injuries in an action by defendant in error, Jeanette Myers, a minor, by her father and legal guardian, against plaintiffs in error, Phillips Petroleum Company and Virgil Hardcastle.

Plaintiff alleged that on and prior to January 7, 1943, defendant Phillips Petroleum Company owned and operated a pipe line which extended across the premises of which plaintiff's father was a tenant and upon which he and his family resided; the pipe line ran through the yard of the premises between the house and barn lot and between the house and a roadway which led to the public highway to the west of the house; the pipe line crossed two well-defined paths through the yard, one leading to the roadway and the other to the barn lot; these paths were continuously used by the Myers family; the yard extending from the house to the barn was a playground used by the children, including the plaintiff; the pipe line crossed the path leading to the roadway about 30 feet from the house, and crossed the path leading to the barn about 50 feet from the house; on December 28, 1942, defendants started removal of the pipe line by digging a ditch to take up the pipe; defendant Hardcastle, employee of defendant Phillips Petroleum Company, was the foreman and superintended the work and participated in the digging of the ditch; the defendants, through their agent, orally agreed with Mr. Myers that the pipe line would be removed and the ditch refilled within one day; on that date the ditch was opened in the yard across the path, about 2½ feet deep and 1½ to 2 feet wide, exposing the pipe line in the bottom of the ditch; at a point about 50 feet south of the kitchen door and across the footpath leading to the barn, defendants caused to be erected a bank of earth on each side of the ditch, composed of loose dirt and rock excavated from the ditch, ap-

proximately 2 feet high, parallel to and extending along the ditch on each side thereof, thus creating a dangerous condition consisting of an open pit from the top of the loose dirt and rock to the steel pipe, a distance of 4 feet or more, directly in the pathway; the pit remained open and unguarded for a period of 18 days; on January 7, 1943, plaintiff, Jeanette Myers, as was her custom, had been playing in the yard and while returning to the house along the pathway and attempting to cross, as the result of the loose rock and dirt under her feet giving way, fell head downward into the ditch so that her head crashed against the iron pipe, resulting in serious, painful, and permanent injuries.

Plaintiff's fall into the ditch and her resulting injury were proximately caused by the joint and concurring negligence of defendants in: Hardcastle's erecting an insecure mound of earth, two feet or more high, across the pathway on each side of the ditch; the omission of defendants to provide a reasonably safe and proper means of crossing the ditch, and in creating the mound of earth so that it was insecure to footing and dangerous to children using the pathway; and the omission of defendants to erect proper barricades and guards.

Defendants, and each of them, knew, or with exercise of ordinary care should have known, that the creation and maintenance of the hazard was and would be unsafe to the minor children.

Phillips Petroleum Company denied generally and alleged affirmatively that in removing the pipe line it was acting under a right-of-way contract with the owner of the premises, by the terms of which the right to lay, maintain, alter, repair, operate, and remove lines for transporting oil, gas, and water over and upon the premises involved was granted to it; that the contract was of record in the county clerk's office; and a copy of the contract was set forth in the instrument attached to the answer. The defendant further alleged that all its operations in removing the pipe line were conducted in a good and workmanlike manner and under the terms and pursuant to the right-of-way contract.

The defendant alleged that after the pipe line ditch was opened, the pipe removed, and the ditch prepared for a backfill, plaintiff's father and mother requested defendants to withhold backfilling the ditch through the yard until defendant had removed the pipe line and refilled the ditch through the adjoining field on the land; that the reason for the request was that the father, Ruie Myers, wanted to plow the field. Defendants, pursuant to the request, removed the pipe line and refilled the ditch through the fields before backfilling the ditch through the yard.

Defendant Hardcastle answered by general denial.

Trial to a jury resulted in a verdict for plaintiff against both defendants, in the sum of $25,000, for which amount judgment was rendered. Defendants appeal.

It is contended that the court erred in refusing to admit in evidence an order of the county court of Hughes county, In the Matter of the Guardianship of Jeanette Myers, a minor, in the nature of instruction by the county court to the guardian relative to the claim against Phillips Petroleum Company. Therein it was recited:

". . . Court having heard testimony of witnesses, and being fully advised in the premises, finds that said minor was injured on or about January 7, 1943 under circumstances that indicate that such injuries may have been proximately caused by the fault of said Phillips Petroleum Company. The Court further finds that the sum of Three Hundred Dollars ($300.00) would be fair, just and reasonable compensation for all claims against said company arising out of or in any way pertaining to said injuries sustained by said minor."

154

The county court, by order, granted Ruie Myers, guardian of Jeanette Myers, a minor, permission to institute suit against Phillips Petroleum Company, and the county court approved and directed the guardian to seek to recover by suit or compromise the sum of $300 for all claims and demands, past, present or future, arising out of or in any way pertaining to the accident, or for damages for injuries sustained by the minor as a result of the accident. The court directed the father, upon receiving payment of said sum, to release and fully discharge Phillips Petroleum Company and its agents and all others from all claims or demands arising out of or in any way relating to the accident or the minor's injuries.

This action for damages was commenced May 6, 1944, by plaintiff's mother, Oma Myers, as next friend of plaintiff. Theretofore, on January 5, 1944, Ruie Myers, the father, was appointed guardian of the person and estate of Jeanette Myers, the minor, then seven years of age. On the same day the county court acted as aforesaid.

Defendants contend the order aforesaid was admissible in evidence to impeach the testimony of Ruie Myers and to establish, or attempt to establish, an agreement between the father, as guardian, and defendant Phillips Petroleum Company, governing the sum to be paid on account of the injuries received by the minor.

Phillips Petroleum Company does not allege that it had at any time an agreement with Ruie Myers as to the amount to be paid as the result of the accident or the result of defendants' negligence, plaintiff's injury and resulting damage.

A settlement, or an agreement to settle, a claim or demand is in the nature of an accord and satisfaction. The distinction in jurisprudence between the two is dim and shadowy, 1 C. J. S. p. 464. Accord and satisfaction is an affirmative defense that must be pleaded. Our rule is that an "accord and satisfaction and other transactions closely allied. . ., such as a compromise agreement, executory accord and novation, in order to be available as a defense, must be specifically pleaded." Gasper v. Mayer, 171 Okla. 457, 43 P. 2d 467.

The order of the county court was not offered in evidence for the purpose stated by defendants. The order was inadmissible to establish an agreement to settle because of defendants' failure to plead a settlement.

The order was inadmissible to impeach the testimony of Ruie Myers, guardian of plaintiff, as no foundation was laid to impeach the testimony given by the guardian as a witness for plaintiff. The guardian, as a witness for plaintiff, was asked no question on cross-examination and he gave no testimony subject to contradiction by the contents of the order. It was not admissible. The learned trial judge so ruled. In this he did not err.

Error is predicated upon the giving of instruction No. 11, and refusing defendants' requested instruction No. 3A.

Instruction No. 11, given, was to the effect that defendant Phillips Petroleum Company, under the contract by which it acquired from the owner of the land an easement, had right to go upon the land and open the ditch for the purposes of the corporate defendant; that plaintiff, as an occupant of the premises, had right to be upon the premises at the time. The court further instructed that under the circumstances it was the defendants' duty in opening the ditch "to exercise that degree of care and caution that an ordinarily prudent person would have exercised under the same or similar circumstances."

This instruction was correct, as approved by this court. Magnolia Pipe Line Co. v. Ricks, 190 Okla. 145, 121 P. 2d 570. In giving the instruction, the trial court did not err.

Defendant's requested instruction No. 3A was substantially the same as the

instruction given by the court relating to the respective rights of the parties on the premises, but by the requested instruction defendants sought to have the jury further advised that under the circumstances the only duty devolving upon Phillips Petroleum Company and its agent was to refrain from creating or permitting to exist hidden dangers, such as pitfalls or other latent conditions not subject to observation by persons rightfully upon the premises.

The "doctrine of hidden danger" was recognized in City of Tulsa v. Frye, 165 Okla. 302,. 25 P. 2d 1080. But in Magnolia Pipe Line Co. v. Ricks, supra, a distinction was made because of a well-defined path leading from plaintiff's home across the field to a pond where water was obtained. In the case at bar the existence of a pathway from the house to the barn is a disputed question of fact.

Many witnesses for plaintiff testified to the existence of the path. A number of defendants' witnesses testified as positively to the contrary. The evidence is in sharp conflict and as a whole is substantially the same as in Magnolia Pipe Line Co. v. Ricks, supra.

By instruction No. 15½ the court submitted to the jury the question of the existence of the path. The instruction as given is correct and the trial court's refusal to give defendants' requested instruction 3A did not constitute a reversible error. The jury's verdict settled the matter of the existence of the path in so far as the view of the reasonable men constituting the jury was concerned.

But it is contended the trial court erred in overruling defendants' demurrer to plaintiff's evidence, and denying defendants' motion for a directed verdict in defendants' favor. This requires an examination of the evidence to ascertain whether it is sufficient to support plaintiff's material allegations. We have made that examination and as a result, find the evidence sufficient, as a consequence of which the learned trial court did not err in overruling defendants' demurrer to the evidence nor in denying the motion to direct a verdict for defendants.

Defendants moved at the trial for an order of the court to appoint a disinterested physician, or physicians, to examine plaintiff in order that he or they might ascertain the extent of plaintiff's injury, if any, and testify according to their findings. The court, upon plaintiff's objection, denied the request.

The court did not indicate why the request was denied; it does not necessarily follow that the court so ruled because the court was without power to require plaintiff to submit to such an examination. However, the rule in this jurisdiction is, and since prior to statehood has been, as shown in City of Kingfisher v. Altizer, 13 Okla. 121, 74 P. 107. In the year 1903, the Supreme Court of Oklahoma Territory ruled that:

"The courts . . . cannot order a plaintiff in an action for an injury to the person to submit to a surgical examination in advance of or during the trial of the cause."

The rule was based upon the rule of the Supreme Court of the United States. Union Pacific Ry. Co. v. Botsford, 141 U.S. 250, 11 S. Ct. 1000, 35 L.Ed. 734. The early decisions of the Supreme Court of the United States were entitled to great weight and were then, in all civil actions where more than $5,000 was involved, binding upon the Supreme Court of the Territory. The Supreme Court of the United States was, during the existence of the Territorial Government, the court of last resort in such civil actions, and as applied to both of the Territories, it was the court of last resort in such civil and criminal cases except as to the court presided over by Judge Parker, which was peculiarly one of original and of final appellate jurisdiction.

The issue was presented to this court after statehood, Atchison T. & S.F. Ry. Co. v. Melson, 40 Okla. 1, 134 P. 388.

The rule of law in this state is uniform as to a plaintiff's right of exemption.

In Jewel Tea Co. v. Ransdell, 180 Okla. 203, 69 P. 2d 69, we held:

"Although a plaintiff in a personal injury case may decline to submit to a physical examination either before or during the trial of the cause, he is not thereby precluded from offering his body or portions thereof in evidence, and if he elects to do so, may not thereafter claim the exemption which he could have previously asserted."

A trial court has authority to direct a plaintiff, in an action for damages for a personal injury, to submit to an examination by an expert selected by the court or defendant where the plaintiff had offered his or her body, or a part thereof, in evidence. Under the circumstances stated, it is not reversible error for the court to deny the request.

The plaintiff in such an action has primary right not to offer in evidence the body. If the body or a part thereof is in evidence and exhibited to the court or jury, the plaintiff may be required to submit to an examination by a physician selected by court or defendant.

Jewel Tea Co. v. Ransdell, supra, supports and affirms the rule stated in City of Kingfisher v. Altizer, supra, and followed in Atchison, T. & S. F. Ry. Co. v. Melson, supra. Plaintiff, in the case at bar, did not offer her body or any part thereof in evidence.

Our attention has been called to the rule in other jurisdictions. If we should depart from our own rule to embrace that said to be the majority rule in American jurisprudence, and under the so-called majority rule hold the court had inherent power to direct a plaintiff, in an action for personal injuries, to submit to physical examination by a physician selected by a defendant or trial court, reversal of the judgment would not be necessary. The rule in other jurisdictions, in the absence of a controlling statute, is that the matter is one of discretion for exercise by the trial court. 25 C.J.S. 846.

The application calling for the exercise of the discretion must be timely. The application comes too late if made after the commencement of the trial. If such an application, as here, is made after commencement of the trial, the burden of showing a good excuse for the delay rests upon the applicant and the application will rarely be approved when made after the commencement of the trial. 25 C.J.S. 851. Kansas, Kentucky, Nebraska, North Carolina, Oregon, Texas, Virginia, Washington, and West Virginia so hold.

No request to the court was made by defendants until long after the trial had commenced. Under the general rule, the request came too late. The trial court cannot be said to have labored in error.

Counsel for defendants set out in brief, alleged improper remarks of counsel for plaintiff as a part of the closing argument to the jury. No objections were made at the time. No ruling of the trial court upon the matter was required. Defendants made no exceptions to the remarks of counsel or rulings of the court. This court will not review alleged misconduct of counsel in making alleged inflammatory argument to the jury, in the absence of either an objection or exception at the time. Levy v. Tharrington, 178 Okla. 276, 62 P. 2d 641; Westgate Oil Co. v. McAbee, 181 Okla. 487, 74 P. 2d 1150; Coalgate Co. v. Bross, 25 Okla. 244, 107 P. 425.

It is contended the verdict is excessive. The verdict is substantial, but there is nothing to indicate that it is so excessive as to shock the conscience of a chancellor. Verdicts of $25,000 or more in actions for damages for personal injuries are by no means uncommon.

According to the evidence, verdict and judgment, plaintiff sustained substantial damages as a result of the injuries. Plaintiff's injuries are of a permanent character. Prior to the injury, plaintiff was an alert and healthy child; she was then a child of less than

seven years of age; she weighed 56 pounds. After the injury she weighed 43 pounds. At the time of the trial, the child was two years older; she weighed less than 56 pounds; her skull was injured and enlarged on the top of plaintiff's head; her skull structure was thickened. There plaintiff has a calcium deposit between the bone and the membrane interlining of the skull, resulting in pressure on the brain. Plaintiff's nervous system as a whole was affected by pressure on the optic nerves. Plaintiff's eyesight was not normal. As a result of the injury, plaintiff has a loss of from 20 per cent to 25 per cent vision in the right eye. Her loss of vision in the left eye was from 15 per cent to 20 per cent, and cannot be corrected by lenses. The loss of vision is permanent and incorrectible, and, according to the experts, may grow worse. Plaintiff suffers severe headaches, as a result of the pressure on her brain, attributed to the injury.

The pressure on plaintiff's brain affects the nerves controlling plaintiff's stomach, as a result of which plaintiff suffers nausea evidenced by vomit occasionally issuing forth from plaintiff.

The testimony of expert witnesses tended to prove dislocation and misalignment between plaintiff's axis, or first cervical vertabrae, and the atlas portion of her spine. Pressure on plaintiff's spinal cord results from this misalignment and dislocation. This pressure affected the nervous system and interfered with the circulation of the cerebral fluids, contributed to the disturbance of the nerves controlling the stomach, and accounts in part for a periodical rather than constant nausea resulting in vomit.

The evidence tends to show the misalignment of the vertabrae causes plaintiff's head to draw backward at times. Such evidence tends to show a general neurotic condition due to the injury.

The verdict and judgment are not excessive when measured by plaintiff's resulting disabilities such as the evidence of experts tends to establish.

An examination of the evidence discloses that the action as a whole was fairly tried.

It is urged that defendants' negligence, if any, was not the proximate cause of plaintiff's injury. One of defendants' acts of negligence charged and sufficiently proved was that the mound of earth erected by defendants in digging the ditch consisted of loose dirt and rocks, about two feet high, near the pit where the iron pipe lay. From all the facts and circumstances in evidence, the jury could well conclude that while plaintiff was attempting to cross the mound, the loose dirt or rock gave way under her feet, throwing her into the ditch, as alleged. Although there is no positive evidence to the effect stated, it was incumbent upon the plaintiff only to produce evidence showing the probability of the proximate cause. The questions of negligence and of proximate cause were for the jury's determination. These issues were resolved in favor of plaintiff and against defendants. The evidence and deduction therefrom which might reasonably be drawn support the verdict and judgment.

Affirmed.

DAVISON, C.J., and WELCH, CORN, LUTTRELL, and JOHNSON, JJ., concur. GIBSON and HALLEY, JJ., dissent.

GIBSON, J. (dissenting). I am of opinion the affirmance of the judgment cannot be justified on sound principles of law. I am of the further opinion the majority has injected into the appeal and held as decisive of a vital issue therein matter that is neither pertinent to nor properly to be considered in the determination of such issue. And, since the holding, if left undisturbed, will, as a precedent, prove fruitful of injustice, I feel compelled to state my views.

The issue in question is whether the court erred in overruling the motion of

defendant to require plaintiff to submit to an examination by physicians to be appointed by the court, which is assigned as error. And pertinent to the consideration thereof is the fact that both prior to and after beginning of the trial and before the motion, the plaintiff had submitted and did submit to examinations and to the taking of X-ray pictures by a physician who testified on plaintiff's behalf concerning the injury, relating facts said to be reflected by the examinations and the X-ray pictures which were then in evidence.

The opinion makes a twofold disposition of the assignment. The first is that under the law, as declared in Atchison, T. & S. F. Ry. Co. v. Melson, 40 Okla. 1, 134 P. 388, the doctrine of which is reaffirmed by the majority, the trial court was without power to require such examination unless the facts brought the case within the exception announced in Jewel Tea Co. v. Ransdell, 180 Okla. 203, 69 P. 2d 69, and that the facts do not bring it within such exception. The second is that, even if the trial court had the power to order such examination, there was no error in its refusal so to do because the motion was not timely made.

It is the second ground of the decision that, in my opinion, injects the foreign matter. The parties litigant did not urge it at the trial, nor do they on appeal. Such fact is sustained by the following: When counsel for defendant moved the court to order the examination, the objection thereto interposed on plaintiff's behalf was solely upon the ground that the court was without power to make such order. In ruling thereon the court sustained the objection without comment. The issue presented by the objection was, solely, whether the trial court was clothed with power to make the order. Such being true, under the authority of the holding in Sharp v. Pawhuska Ice Co., 90 Okla. 211, 217 P. 214, plaintiff would not be heard on appeal to justify the court's ruling on the basis of any ground other than that presented below. The

rationale of the rule is that the issue raised on appeal must have been considered by the trial court and then only after notice thereof which will enable the adverse party to be heard thereon. In light of the holding I deem it manifest that any consideration of the timeliness of the motion as pertinent to the issue on appeal is precluded by such holding and, therefore, that the only question for review on said assignment is the correctness of the trial court's holding that it was without power to grant the order, which is sustained by the majority in said first ground of the decision.

The holding that the trial court is without power to require the examination is supported by no expressed conviction that it will promote justice on the issues between the parties nor by reference to any recognized applicable principles of law that are indicative thereof. The basis of the decision is expressly made to rest solely upon the doctrine of Atchison, T. & S. F. Ry. Co. v. Melson, supra, as applicable and controlling.

It is my opinion that the reason for the doctrine of that case, to the extent that same could be held applicable to the facts herein, no longer obtains, and, further, that the doctrine of that case to that extent has been overturned by this court in Jewel Tea Co. v. Ransdell, supra, and that, on authority thereof, the trial court, in the instant case, had power to order such examination.

The doctrine of Atchison, T. & S. F. Ry. Co. v. Melson, supra, is thus declared in the first paragraph of the syllabus:

"The courts of this state cannot, in the absence of statutory or constitutional provision so authorizing, order a plaintiff in an action for damages to his person to submit in advance of or during the trial of the cause to examination by a physician, to be appointed by the court."

That decision is a re-affirmation of a similar pronouncement previously made by the Territorial Supreme Court

in the case of City of Kingfisher v. Sparel Altizer, 13 Okla. 121, 74 P. 107, which was merely expressive of the holding in Union Pacific Ry. Co. v. Botsford, 141 U. S. 250, 11 S. Ct. 1000, 35 L. Ed. 734, the syllabus of which we quote:

"In a civil action for an injury to the person, the court, on application of the defendant and in advance of the trial, has no legal right or power to order the plaintiff, without his or her consent, to submit to a surgical examination as to the extent of the injury sued for."

Though each of those decisions is directed to a situation wherein the plaintiff had not seen fit in his own interest to expose his person as evidence prior to defendant's request, the soundness of the opinion was not only questioned by the dissent by Justices Brewer and Brown, but by Wigmore on Evidence and the Supreme Courts of many of the states. In the dissent it is said:

"The end of litigation is justice. Knowledge of the truth is essential thereto. It is conceded, and it is a matter of frequent occurrence, that in the trial of suits of this nature the plaintiff may make in the court room, in the presence of the jury, any not indecent exposure of his person to show the extent of his injuries; and it is conceded, and also a matter of frequent occurrence, that in private he may call his personal friends and his own physicians into a room, and there permit them a full examination of his person, in order that they may testify as to what they see and find. In other words, he may thus disclose the actual facts to the jury if his interest require; but by this decision, if his interests are against such a disclosure, it cannot be compelled. . . . It is said that there is a sanctity of the person which may not be outraged. We believe that truth and justice are more sacred than any personal consideration; and if in other cases in the interests of justice, or from considerations of mercy, the courts may, as they often do, require such personal examination, why should they not exercise the same power in cases like this, to prevent wrong and injustice?"

In Wigmore on Evidence (3d Ed.) vol. 8, §2220 there is declared:

"The duty to bear witness to the truth, by whatever mode of expression may be appropriate, includes necessarily the duty to exhibit the *physical body*, so far as the ascertainment of the truth requires it."

The author discusses the Botsford case and reaches the conclusion that the rule there announced could have no proper application in cases where the trial court deems an examination proper for the ascertainment of the truth. After calling attention to the necessity therefor by reason of the thousands of dangers incident to modern activities giving rise to personal injuries, the author continues:

"There is and will be no end to the variety of frauds invented; and it will be an ill day for justice when the Courts cease to meet new frauds by new applications of old remedies. Quite apart from the general impolicy of granting to a party the license to conceal truth by any form of refusal, there is, in this class of cases, the added consideration that corporal injuries are today notoriously a subject of frequent fraud and misrepresentation; so that the privilege to withhold the exhibition of the alleged injury may amount in such cases to nothing less than a judicial license for fraud.

"These considerations, together with the absurdity of judicial declaration that a Court lacks the power to control those who seek for their fraud the very aid of the law itself, have weighed emphatically with our Courts and Legislatures. Subject to certain restrictions not affecting the fundamental principle, they have generally repudiated the existence of such a privilege in actions for *personal injuries* (including *malpractice*):

"1882, Gunnison, P. J., in Hess v. R. Co., 7 Pa. Co. Ct. 565, 566 (The plaintiff complained of an injury of the spine; and the defendant asked for an order of physical examination by means of electrical tests, etc.): 'To grant the order prayed for is but to apply the principle of allowing the inspection of writ-

ings, fully recognized in this State, to another species of evidence. . . The object of a trial in Court is that substantial justice may be done between the litigants. If a defendant is denied the reasonable opportunity of testing the truth of the plaintiff's allegations, who alleges an injury which can only be discovered upon an examination by experts, Courts of justice may be applied to and relied upon to assist in fraudulent and unjust recoveries upon the testimony of plaintiffs and of witnesses of their own selection, whose only knowledge may be derived from declarations made by the plaintiffs for the purpose of manufacturing evidence in their own favor. Impartial justice could not be expected in such cases at the hands of juries who were not permitted to know the truth and whose sympathies were aroused by the recitation of sufferings which could not be controverted. To permit such a practice would be to encourage perjury and properly subject Courts of justice to public contempt. On the other hand, if the plaintiff's claim is meritorious, if he has sustained the injuries he complains of, he has nothing to fear from the most searching examination. His case will only be strengthened by it.'

"1877, Beck, J., in Schroeder v. R. Co., 47 Ia. 375, 379: 'Whoever is a party to an action in a Court, whether a natural person or a corporation, has a right to demand therein the administration of exact justice. This right can only be secured and fully respected by obtaining the exact and full truth touching all matters in issue in the action. If truth be hidden, injustice will be done. The right of the suitor, then, to demand the whole truth is unquestioned; it is the correlative of the right to exact justice . . . To our minds the proposition is plain that a proper examination by learned and skilful physicians and surgeons would have opened a road by which the cause could have been conducted nearer to exact justice than by any other way. The plaintiff, as it were, had under his own control testimony which would have revealed the truth more clearly than any other that could have been introduced. The cause of truth, the right administration of the law, demand that he should have produced it . . . It is said

that the examination would have subjected him to danger of his life, pain of body, and indignity to his person. The reply to this is that it should not; and the Court should have been careful to so order and direct. . . . As to the indignity to which an examination would have subjected him, as urged by counsel, it is probably more imaginary than real. An examination of the person is not so regarded when made for the purpose of administering remedies; those who effect insurance upon their lives, pensioners for disability incurred in the military service of the country, soldiers and sailors enlisting in the army and navy, all are subjected to rigid examinations of their bodies; and it is never esteemed a dishonor or indignity. . . . If for this purpose (to show the nature of the injury) the plaintiff may exhibit his injuries, we see no reason why he may not, in a proper case and under like circumstances, be required to do the same thing for a like purpose upon the request of the other party.' "

That there no longer exists any reason for one, seeking redress for injury to the person, to refuse to submit to medical examination where proper to a determination of the claim, is attested by the State Legislature in the Workmen's Compensation Act wherein it is provided submission to such examination is a condition precedent to enjoyment of the benefits thereof. A change of the forum where the claim is prosecuted can have no bearing upon the question.

I know the majority was not influenced in its conclusion in the instant case and I do not believe that this court will ever be influenced in its consideration of the rule by House Bill 503 of the present (22nd) Legislature. That was an Act to require the plaintiff in an action to recover damages for personal injuries to submit to a physical examination. It was killed, however, at the request and insistence of the authors of the Bill, and, of course, in such circumstances that cannot be said to represent the serious and considered opinion of the members of the House of Representatives on the merits of the

Bill, or a bona fide refusal of the Legislature to change the rule.

Also, it may be noted that the rule in the Botsford case no longer obtains in Federal courts, but examinations are provided for under the Federal Rules of Civil Procedure.

In my opinion the observations quoted above by professor Wigmore, to which many of like tenor from other jurisdictions could be added, show that the underlying reason for the rule, the right to protect one's person from prying eyes, if existent, is clearly subordinate to the demands of that justice which is ostensibly invoked by the plaintiff. And, in view of the fact that the only evidence concerning the nature and extent of the injury to the plaintiff herein is that to be drawn from expert testimony predicated upon symptoms reflected by personal examination and X-ray pictures of plaintiff's head, the pertinency and force of the quoted observations and the impossibility of a fair trial as therein indicated are too obvious for argument if it be held that the trial court is without power to direct an examination. It is my contention that it cannot be properly so held, in the instant case, on authority of Atchison, T. & S. F. Ry. Co. v. Melson, supra, which does no more than reannounce the doctrine of the Botsford case.

The rule declared in the Botsford case is predicated upon the sanctity of the person against invasion by another and, as hereinbefore indicated, the scope of its application as therein considered was confined to a situation wherein the plaintiff had not of his own volition exhibited his person as evidence. The holding therein cannot be properly held to be applicable as authority in situations where the plaintiff, voluntarily, has already so exhibited his person or has done that which in contemplation of law is its equivalent. It is in recognition of this distinction that this court declared in Jewel Tea Co. v. Ransdell, supra, that said rule was without application where the plaintiff had exhibited his body in evidence. We said:

"In the present case the defendant admitted liability for the plaintiff's injuries, whatever they were, and the sole questions for the jury to determine were the nature and extent of such injuries and the amount of damages to be properly awarded therefor. Under these circumstances the exhibition by the plaintiff of the injured portions of her face and mouth could have had but one purpose, namely, to enhance the amount of damages to be awarded by the jury. While the courts are in disagreement as to the authority to require a plaintiff to submit to an examination in the first instance, they are in practical unanimity with respect to the rule to be followed when the plaintiff has offered a portion of his body in evidence, and hold that the same then becomes an exhibit in the case, and that within reasonable limitations the opposite party has the right to make such inspection of it as will enable him to explain, criticize or impeach its value as evidence and to that end have it examined by experts. See Winner v. Lathrop, 67 Hun, 511, 22 N. Y. Supp. 516; Haynes v. Town of Trenton, 123 Mo. 326, 27 S. W. 622; Chicago, R. I. & P. Ry. Co. v. Langston, 19 Tex. Civ. App. 568, 47 S. W. 1027, 48 S. W. 610, 611; Houston & Texas Central Ry. Co. v. Anglin, 99 Tex. 349, 89 S. W. 966, 2 L. R. A. (N.S.) 386; Chicago & N. W. R. Co. v. Kendall, 167 Fed. 62, 93 C.C.A. 422, 16 Ann. Cas. 560; Booth v. Andrus, 91 Neb. 810, 137 N. W. 884, and Holton v. Janes, 25 N. M. 374, 183 P. 395."

Therein the plaintiff was a minor and it was urged upon that ground that neither the plaintiff nor her counsel could waive the exemption from an examination. In denying the contention the court said:

"The plaintiff misconceives the nature of the right which exists in the first instance, that is, the right of the plaintiff to keep his body out of evidence if he so desires."

While in that case the body was exhibited, I can see no reason why the rule there applied should not be equally applicable where in lieu of the body plaintiff elected to introduce as the ex-

hibit a picture thereof which would be more convincing for the purpose sought to be accomplished. The logic of the holding is not the method of putting the body in evidence but the fact thereof. In other words, where the plaintiff puts the condition of his body in evidence it is the truth of such condition that becomes pertinent to the issue before the court in the determination of which it would be the enactment of a farce to require the court to abide the interpretation made by witnesses of plaintiff's selection. In my opinion, the majority's holding that the plaintiff did not expose her person and therefore the court was without power to require the examination is to mistake the shadow for the substance or the letter of the law for its spirit. From the viewpoint of the majority's interpretation of the quoted holding, if plaintiff had merely exhibited her scalp as evidence, such fact, though productive of no substantial proof of the effects of the injury, would entitle the court to require the plaintiff to submit to examination and X-ray pictures if deemed necessary to establish the truth. But, on the other hand, if plaintiff elected, in lieu of exhibiting her scalp which she knows to be of little probative value, to exhibit in evidence X-ray pictures thereof which do reflect proof of the body condition, the court is foreclosed of power to act. It cannot be gainsaid that such a construction would have the effect of placing a premium on fraud. If the holding in the Jewel Tea case is to be deemed not sufficiently broad to cover the situation here reflected, the same should be widened so as to embrace it, because the reason therefor is fully as great as that for its present scope.

In my opinion, the trial court was possessed of power to order the examination upon a proper showing being made and that this court should reverse the judgment and remand the cause for a new trial. And, further, if the court should adhere to its holding that the trial court is without such power, there should be eliminated from the opinion the considerations therein ex-

pressed as to the timeliness of defendant's motion, since that question was not urged or considered by the trial court, but was injected into the appeal by this court.