OKLAHOMA TRANSPORTATION COMPANY, a Corporation, and Ray Pasley, Individually, Plaintiffs in Error,

v.

Mrs. T. W. STINE, Defendant in Error.

No. 34751.

Supreme Court of Oklahoma.

March 8, 1955.

Gilliland, Ogden, Withington, Shirk & Vaught and W. R. Withington, Oklahoma City, for plaintiff in error.

W. B. Edwards, Seminole, for Oklahoma Transportation Co., Tom Biggers, Ponca City, and Dick Bell, Seminole, for defendant in error.

BLACKBIRD, Justice.

Mrs. T. W. Stine brought this action in the Superior Court of Seminole County against Oklahoma Transportation Company and Ray Pasley for damages for personal injuries arising out of a collision between a Packard automobile being driven by her husband, in which she was a passenger, and a bus being operated by defendant Oklahoma Transportation Company under an arrangement with the bus owner and driver, Ray Pasley. It was admitted that at the time of the occurrence complained of Ray Pasley was the agent of Oklahoma Transportation Company and acting within the scope of his employment.

In accordance with the allegations of her petition and pertinent to the questions herein raised plaintiff's evidence reasonably tends to show that at about 10 o'clock on the morning of July 17, 1947, plaintiff was riding as a passenger in a Packard car being driven by her husband; that they were proceeding north on Second Street in Seminole; that they arrived at the intersection of Second Street with West Broadway, which is an east-west thoroughfare over which U. S. Highway 270 goes

through the City of Seminole; that said intersection is in the main business district of Seminole and each of the streets forming such intersection is about 60 feet wide; that the car in which plaintiff was riding stopped at the stop sign on Second Street on the south side of the intersection; that plaintiff's husband had started on into the intersection when plaintiff saw the bus coming "awfully fast" from the east going west; that plaintiff's husband was already in the intersection when she saw the bus; that the bus hit the Packard car on the right front fender before it got halfway across the intersection and while it was still south of the center line of West Broadway; that the two vehicles locked together and stopped side by side in the southwest quarter of the intersection near the curb; that in the collision plaintiff sustained the injuries shown by her testimony; that the bus that morning had left the bus station some two or three blocks east of this intersection about half an hour late; that the bus driver was in a hurry; that he was traveling from 35 to 40 miles an hour; that before reaching this intersection the bus driver swerved to his left into the south lane of traffic to avoid hitting a car which was backing from a parked position at the north curb of Broadway; that the bus driver after passing such backing car did not pull back to his right or slow his speed but continued on into the intersection about astraddle of the center line of Broadway.

Defendants' evidence is in almost direct conflict and reasonably tends to show that plaintiff's husband did not stop at the stop sign before proceeding into the intersection, but ran in front of defendants' bus; that the Packard car hit the bus; that the bus was proceeding at a normal rate of speed, about 15 to 20 miles per hour, on its right side of the street.

The cause was tried to a jury who returned a verdict in favor of plaintiff against both defendants in the sum of $6,000 and judgment was rendered thereon. From order overruling motion for new trial, defendants appeal.

Defendants contend that inasmuch as their bus was traveling on an arterial highway protected by stop signs their bus driver had the right to assume that plaintiff's car would stop at the stop sign and yield the right of way; that they would not be chargeable with negligence until after they became aware that plaintiff's car was not going to stop at the stop sign, and that they were entitled to an instruction to this effect as requested by them and refused by the court. They further contend that Instruction No. 11 given by the court is not applicable to this case at all and the giving thereof was prejudicial to them.

By Instruction No. 11, about which defendants complain, the jury was told that the statutes provide that any person driving on a highway must drive at a careful and prudent speed under the conditions then existing and must be able at all times to stop within the assured clear distance ahead; that at intersecting roads vehicles approaching from the right have the right of way over those approaching from the left where two vehicles approach the intersection at approximately the same time, but if the vehicle approaching from the left reaches the intersection an appreciable length of time ahead of the vehicle approaching from the right, the vehicle first entering the intersection has the right of way over the other whether approaching from the right or left.

The court also instructed the jury that it was the duty of the driver of the automobile in which plaintiff was a passenger to stop at the stop sign before entering the intersection; that if he did stop he then had the right to proceed across the intersection provided that it appeared to him as a reasonable man that there was no other vehicle coming toward the intersection from either direction at such distance as to constitute an immediate hazard. In another instruction the court told the jury that after plaintiff's driver stopped at the stop sign, if the jury found that he did so stop, then plaintiff's driver had a right to proceed across the intersection providing there were no other cars in such close proximity that it appeared such cars would strike plaintiff's car if it did proceed and in judging this fact plaintiff's driver had the right to assume that any approaching car would approach at a lawful rate of speed un-

til he and plaintiff saw or as reasonable persons should have seen to the contrary.

Under the evidence and all reasonable inferences that might be deduced therefrom, it was a disputed question of fact whether defendants' bus was approaching the intersection at a lawful rate of speed; whether the bus arrived at the intersection at approximately the same time that plaintiff's car did; or whether at the time plaintiff's car entered the intersection the bus was such distance away that plaintiff's driver as a reasonable man thought the bus was at such distance and coming at such speed as not to constitute an immediate hazard; and whether plaintiff's driver did or did not stop at the stop sign and thus become entitled to proceed if it appeared to him as a reasonable man that he could do so with safety. As defendant's bus was approaching from the right, under Instruction 11 it had the right-of-way unless the jury resolved all of the above disputed factors in plaintiff's favor.

■ The substance of defendants' principal complaint concerning the court's instructions seems to be expressed in their view that the court gave no instructions, or insufficient instructions, based upon the "arterial" or "through highway", or "favored thoroughfare" doctrine, which is incorporated in Tit. 47 O.S.1951 § 121.6. The most pertinent part of this section is subsec. (c), which provides as follows:

"(c) The driver of a vehicle shall stop as required by this Act at the entrance to a through highway, and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway, or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway."

For a discussion of some of the questions arising under said statute in a case somewhat similar to the present one, see Hansen v. Cunningham, Okl., 258 P.2d 906, and the authorities therein cited. We think the instructions we have described sufficiently followed the substance of the above statutory rule, especially in view of the fact that defendants requested on the subject no more specific instruction that was entirely correct. In this connection see Sanders v. C. P. Carter Const. Co., 206 Okl. 484, 244 P.2d 822.

■ Defendants complain of the court's refusal to give their Requested Instruction No. 1, which would have correctly told the jury that the bus driver could assume that Mr. Stine, driver of the Packard, would stop it at the stop sign, but the principal fault in this instruction was that it also told them that the bus driver could also assume that plaintiff's said driver would also let the bus pass through the intersection (before it). The bus driver's right-of-way to drive his bus across the intersection before the Packard entered it was dependent upon the bus's position with reference to the intersection, as we have noted the court told the jury by the instructions it gave.

■ Defendants further complain of the alleged failure of the court to instruct the jury how to hold if they found that Mr. Stine failed to stop at the stop sign. Here, again, the allegation is unfounded. As we have noted, the court told the jury it was the duty of plaintiff's driver, Stine, to stop his car at the stop sign, and by another instruction negligence was defined by setting forth its elements of the existence of a duty, a failure to perform it, and injury proximately resulting therefrom. Although in this definition the court referred to the duty as that of defendants toward plaintiff, it gave other instructions which authorized the jury to find that plaintiff also might have been guilty of negligence which, if it proximately caused or contributed to the accident, would exonerate defendants. These were followed by Instruction No. 8, wherein the court told the jury that before the defendants, or either of them, could be held liable, plaintiff must have proved "by a fair preponderance of the evidence that the defendants, or one of them, were guilty of negligence,

and that this negligence was the proximate cause of her injuries."

■ Defendants next contend that the court erred in failing to give an instruction on "sudden emergency." We note that in its answer the defendant, Oklahoma Transportation Company, pleaded that the accident was "unavoidable", and its counsel now contend that the court should have instructed that if Mr. Stine drove his car into the intersection without stopping and thus created an emergency, then, if the bus driver, Pasley, acted as 'a reasonably prudent person in such emergency, plaintiff could not recover. Defendants' counsel recognize that they did not offer an instruction on "sudden emergency" 'as applied to the issue of fact they now argue about, and that the only such instruction they offered was their Requested Instruction No. 3, which dealt with Pasley's driving the bus south of the center line on Broadway after another car had backed out of a parking place into its path. They contend, however, that the requested instruction was sufficient to call the court's attention to the fact that "sudden emergency" was an issue in this case. Here again, we think the court's instructions numbered 16 and 10, were sufficient to submit both the issue of fact involved in the requested instruction and the one about which they now argue, especially in view of the fact that the defense of "sudden emergency" is "so closely akin to that of unavoidable accident * * *." Yellow Taxicab & Baggage Co. v. Alsup, 175 'Okl. 332, 52 P.2d 724, 726. See also Wilson v. Roach, 101 Okl. 30, 222 P. 1000. We have thoroughly examined all of the instructions given and though they perhaps do not point out as clearly as they might that plaintiff could not recover if the accident was due solely to the negligence of her husband and they were not as complete and specific as they might have been on all issues, still we think, upon their consideration as a whole, that they fairly and correctly submitted all appropriate issues to the jury; and we have concluded that the defects referred to do not, under the circumstances, constitute cause for reversal. See, in addition to Sanders v. C. P. Carter Const. Co., supra, St. Louis-San Francisco Ry.

Co. v. Withers, Okl., 270 P.2d 341, and the principles and authorites cited on page 346 thereof.

■ Lastly, defendants urge that the court erred in refusing their request made during the course of the trial, to have a physical examination of plaintiff by doctors of their own choice. The record reveals that this request was made after both plaintiff and her physican had testified concerning her injuries and the physician had used X-Ray pictures she had had taken, and which were exhibited, as the basis for some of the doctor's testimony. In opposition to such request, plaintiff's counsel objected to his client's being required to undergo such an examination "at this late date" and stated to defendants' counsel: "You have had two and a half years to examine her * * *." Defense counsel's retort to plaintiff's counsel was: "We have asked for it a lot of times." The record, however, does not reveal any such request had ever before been made of the court or that the court had ever been apprised in any manner whatsoever of defendants' desire for such an examination. It does reveal, however, that almost two years had elapsed since the last pleading was filed in the case and that more than two years had elapsed since the filing of plaintiff's petition showing that she sought damages for personal injuries and describing their nature. Most jurisdictions, whether they be those in which by statute or legal precedent, it is held that the court has power to require a party to submit to a physical examination or whether they be one of those, like our own, which holds that such examination may be required only after the party has waived his exemption therefrom, recognize that the request for such an examination must be timely made, and that, in the absence of a controlling statute, the matter rests within the sound discretion of the trial court whose ruling will not be disturbed, absent a showing of an abuse thereof. Phillips Petroleum Co. v. Myers, 202 Okl. 151, 210 P.2d 944, and the authqrities therein cited; 17 Am. Jur., "Discovery and Inspection", sec. 59; Annotations, 108 A.L.R. 142, 147. As pointed out by the authorities, when the party desiring that the physical examination

be made or undertaken, waits until after the trial has commenced to make the request, he has the burden of showing a good excuse for such delay. In accord therewith, and, assuming without deciding that under the circumstances herein shown, plaintiff waived any personal exemption she may have had from submitting her body to a physical examination at defendants' behest, we have concluded that since the record fails to disclose that defendants ever, during the more than two years previous to the trial that plaintiff's petition was on file, made a request of the court to have her examined, or in any manner recorded in the proceedings such a desire, its request (after the commencement of the trial) came too late and was not timely. And, in the absence of any showing of a good excuse for such delay, the Court's refusal of said request cannot be deemed an abuse of its proper discretion and therefore error, under the foregoing authorities.

As no cause for reversal appears in any of the alleged errors urged, the judgment of the trial court is affirmed.

WELCH, CORN, DAVISON and JACKSON, JJ., concur.

JOHNSON, C. J., WILLIAMS, V. C. J., and HALLEY, J., dissent.